**Almira LAHR, Appellant,**

**v.**

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, Respondent.**

No. C6–94–2054.

Court of Appeals of Minnesota.

Feb. 28, 1995.

Dan T. Ryerson, Gislason, Martin & Varpness, P.A., Edina, for appellant.

Mary M. Kruse, Arden Hills, for respondent.

Considered and decided by RANDALL, P.J., and HARTEN and MINENKO *, JJ.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

EUGENE MINENKO, Judge.

Passenger challenges summary judgment for driver's insurer, arguing that she is entitled to UIM benefits from driver's insurer where the other potentially at-fault vehicle is "underinsured." We reverse and remand.

## FACTS

Appellant Almira Lahr was a passenger in a car driven by Elizabeth Peura. On February 5, 1990, Peura collided with a vehicle driven by Mary Kay Kivisto. Respondent American Family Mutual Insurance Company (American) insured Peura, providing $50,000 in liability coverage and $50,000 in UIM coverage. American's policy defined "underinsured motor vehicle" to exclude vehicles owned by the insured. Atlantic Mutual Insurance Company (Atlantic) insured Kivisto for $100,000 in bodily injury liability coverage. Western National Mutual Insurance Company (Western) insured Lahr's own vehicle—not involved in the accident—for $100,000 of UIM coverage.

Lahr sent American a *Schmidt v. Clothier* notice informing them that she intended to settle with Atlantic—Kivisto's insurer—under its liability coverage but that she intended to pursue UIM benefits from American. American paid Lahr $50,000 under its liability coverage. American declined to substitute payment for the proposed Kivisto settlement. Lahr then settled her liability claims against Kivisto with Atlantic for $80,000 and executed a *Pierringer* release.

On January 21, 1993, Lahr obtained $35,500 from her own insurer, Western, in settlement of her underinsured claims. Western also loaned her $49,500, repayable only if Lahr is successful in her UIM action against American.

Lahr then brought this declaratory judgment action against American claiming damages in excess of $150,000 and seeking up to $50,000 in UIM benefits to the extent that

Kivisto was underinsured with respect to the portion of damages attributable to Kivisto.

American moved for summary judgment on the alternate grounds that as a matter of law a passenger could not recover UIM benefits from the driver's insurer and that joint and several liability should not apply to determine whether a vehicle is "underinsured." The district court granted summary judgment for American, concluding that a passenger may not recover UIM benefits from the driver's insurer. Lahr appeals.

## ISSUE

Did the district court err in granting summary judgment for a driver's insurer on a passenger's claim for UIM benefits where another potentially at-fault vehicle allegedly was "underinsured"?

## ANALYSIS

On review of a summary judgment, this court must determine if there are any genuine issues of material fact and whether the district court correctly applied the law. *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 112 (Minn.1992). The interpretation of an insurance contract is a question of law as applied to the facts presented. *Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992). Similarly, the construction of a statute is a question of law and therefore is fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985).

Lahr concedes that prior case law prohibits her from obtaining UIM benefits from American—her driver's insurer—if the vehicle American insured (Peura's) was either the only vehicle involved in the accident or the only at-fault "underinsured" vehicle. The question here, however, is whether Lahr can obtain UIM benefits from American for Kivisto's lack of sufficient liability coverage to satisfy that portion of damages for which Kivisto is liable.[1]

---

1. There has been no determination yet of Lahr's total damages or the relative contribution of fault by Peura and Kivisto. Lahr's declaratory judgment action thus presumes that Kivisto was at

least partially at fault and Kivisto's liability coverage is inadequate to cover her share of Lahr's injuries.

The maximum liability of an underinsured motorist insurer

is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle. *If a person is injured by two or more vehicles, underinsured motorist coverage is payable whenever any one of those vehicles meets the definition of underinsured motor vehicle in section 65B.43, subdivision 17.* However, in no event shall the underinsured motorist carrier have to pay more than the amount of its underinsured motorist limits.

Minn.Stat. § 65B.49, subd. 4a (Supp.1989) (emphasis added).[2]

The statute formerly provided that

[w]ith respect to underinsured motor vehicles, the maximum liability of an insurer is the lesser of the difference between the limit of underinsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or the amount of damages sustained but not recovered.

Minn.Stat. § 65B.49, subd. 4a (1988). Thus, the 1989 amendment not only changed from a difference-of-limits approach back to the "add-on" approach, but also expressly addressed the situation where more than one vehicle is at fault.

Subdivision 3a(5) states:

[i]f at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle. However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured.

Minn.Stat. § 65B.49, subd. 3a(5) (Supp.1989). Under this subdivision, a passenger must look first to the UIM coverage afforded by the driver's insurance. *Thommen v. Illinois Farmers Ins. Co.*, 437 N.W.2d 651, 653 (Minn.1989).[3] American's definition of "underinsured motor vehicle" excluded, however, any vehicle owned by the insured. Such an exclusion of Peura's vehicle from being "underinsured" is valid. *Id.* at 654 (citing *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 291 (Minn.1983)). *Thommen* prevents the conversion of first-party UIM coverage into third-party liability insurance; otherwise, the insured could purchase less expensive UIM coverage in lieu of additional liability coverage for herself. *Id.* Thus, where only one car is involved or at fault, an injured passenger cannot obtain UIM benefits from the driver's insurer.

Lahr acknowledges the validity of this prohibition, but argues that it does not extend to situations where a passenger seeks UIM benefits from her driver's insurer for the *other* at-fault vehicle's lack of adequate liability coverage. Rather, Lahr, although a passenger in a vehicle insured by American, seeks UIM benefits from American because American's UIM obligation is triggered by Kivisto being "underinsured" with respect to Kivisto's share of liability.

Lahr argues that cases prohibiting an injured passenger from claiming UIM benefits from her driver's insurer after obtaining liability coverage from that insurer are confined to situations where only the passenger's driver is liable (either because only that vehicle is involved or because the other involved vehicle is not at fault). We agree.

Lahr correctly notes that in the prior UIM cases disallowing a passenger's recovery of UIM benefits from her driver's insurer only a single vehicle was potentially at fault. For example, *Myers* involved a "one-car accident." *Myers*, 336 N.W.2d at 291. Similar-

---

2. The 1989 UIM amendments "are effective for all contracts issued or renewed on or after August 1, 1989, or for all injuries occurring on or after August 1, 1989." 1989 Minn.Laws ch. 213, § 3. The accident here occurred in February 1990 and therefore is governed by the 1989 amendments.

3. Although *Thommen* addressed the 1986 version of the UIM statute, the 1989 amendments did not change section 65B.49, subdivision 3a(5), and the principle of *Thommen* remains valid today.

ly, in *Meyer v. Illinois Farmers Ins. Group*, 371 N.W.2d 535 (Minn.1985), a one-vehicle accident, the court noted that an insured should purchase additional liability coverage to protect himself and his passengers against the risk of "his own negligence." *Id.* at 537. Finally, in *Thommen*, the supreme court stated that the exclusion of the insured's car from qualifying as "underinsured" precludes a passenger from UIM benefits "if [the driver's] negligence was the sole cause of the accident." *Thommen*, 437 N.W.2d at 653.[4]

Further, subdivision 4a clarifies that UIM benefits are triggered in multi-vehicle accidents whenever "any" vehicle is underinsured. Minn.Stat. § 65B.49, subd. 4a. This provision would be pointless if a passenger could not recover UIM benefits from the driver's insurer if multiple vehicles were at fault. Similarly, the general rule of *Thommen*—that a passenger must first look to the driver's UIM coverage—would also be meaningless if the prohibition against recovering from that insurer applied even in multi-vehicle accidents.

American argues that allowing Lahr to recover UIM benefits from her driver's insurer would convert Peura's first-party UIM coverage into third-party liability coverage. We disagree. Where a vehicle other than the one in which the passenger is riding is potentially at fault, the prohibition against converting the passenger's driver's UIM coverage into liability coverage is not applicable because the driver's lack of adequate liability coverage is not at issue. Rather, the other vehicle's lack of sufficient liability coverage is what triggers the passenger's claim for UIM benefits from her driver's insurer. *See Myers*, 336 N.W.2d at 291 (underinsured coverage protects insureds from inadequate compensation resulting from accident with an inadequately insured vehicle). There is no conversion into third-party liability coverage because Peura's UIM benefits are not substituting for Peura's inadequate liability coverage but for Kivisto's inadequate liability coverage.[5]

We again note that there has been no determination yet of Lahr's total damages or any apportionment of fault between Peura and Kivisto. Actual recovery of UIM benefits from American will depend upon a determination of total damages and an apportionment of fault that renders Kivisto "underinsured" with respect to her share of liability.[6]

## DECISION

The district court erred in granting American summary judgment on Lahr's claim for UIM benefits.

**Reversed and remanded.**

4. Although *Thommen* involved a two-car accident, the supreme court noted that only the driver of the car in which the UIM claimant was a passenger was causally negligent. *Thommen*, 437 N.W.2d at 654 n. 3.

5. The district court did not address the issue of joint and several liability. We note, however, that any reapportionment of Peura's fault to Kivisto under Minn.Stat. § 604.02, subd. 2 (1992) that would render Kivisto "underinsured" might violate *Thommen*.

6. American argues that the "closeness to the risk" analysis of *Integrity Mut. Ins. Co. v. State Auto. & Casualty Underwriters Ins. Co.*, 307 Minn. 173, 239 N.W.2d 445 (1976), applies here. But the *Integrity Mut. Ins. Co.* analysis applies where there is a conflict among the "other insurance" clauses of multiple insurers to apportion liability among insurers each of which is liable. *Integrity Mut. Ins. Co.*, 307 Minn. at 175–76, 239 N.W.2d at 447. This UIM case does not concern "other insurance" clauses.