**Daniel J. SCHEIBEL, petitioner, Appellant,**

**v.**

**ILLINOIS FARMERS INSURANCE COMPANY, an Illinois corporation, Respondent.**

No. C1–98–2097.

Supreme Court of Minnesota.

July 27, 2000.

OPINION

PAUL H. ANDERSON, Justice.

Daniel Scheibel suffered injuries that were causally related to two separate motor vehicle accidents, both occurring when he was insured under a no-fault automobile insurance policy with Illinois Farmers Insurance Company. Illinois Farmers paid Scheibel his policy maximum for medical benefits for the second accident, but not the first. Because Scheibel was not fully reimbursed for the total amount of the loss he incurred as a result of both accidents, he brought this action in district court to recover his additional medical expense loss and income loss benefits. The district court entered summary judgment in favor of Illinois Farmers, concluding that medical expense benefits may not be apportioned between multiple accidents under the Minnesota No–Fault Automobile Insurance Act (no-fault act). The district court also concluded that Scheibel was limited to only $250 in weekly income loss benefits. The Minnesota Court of Appeals affirmed. We affirm in part, reverse in part, and remand.

On the morning of March 19, 1996, appellant Daniel Scheibel was driving his Ford pickup truck and, while waiting at a stop sign, was rear-ended by another vehicle. The impact from the collision caused Scheibel's head to jerk back and hit the truck's rear window. Scheibel did not immediately consult a physician, but as a result of muscle spasms and ensuing pain in his right shoulder, arm, and neck, he visited a physician on April 8, 1996. The physician treated Scheibel's injuries. Scheibel submitted a claim to respondent Illinois Farmers for his medical expenses and it appears that Illinois Farmers made some payment on this claim. Under his no-fault automobile insurance policy with Illinois Farmers, Scheibel was covered for medical expenses up to a limit of $20,000.

Nearly two months after his first accident, on May 12, 1996, Scheibel was again rear-ended while driving his pickup truck. Three days after this second accident, Scheibel again visited his physician, who noted that Scheibel's symptoms were significantly worse than at his first visit. The physician ordered an MRI scan of Scheibel's cervical spine. The scan identified various problems, including broad posterior disc bulging, peridiscal end plate spurring, and a mild degenerative disc. Following subsequent medical tests, a neurological specialist diagnosed Scheibel with cervical osteoarthritis that was exacerbated by the second accident.

Scheibel underwent back surgery on November 25, 1996, involving anterior cer-

vical decompression and anterior cervical fusion. After the surgery, Scheibel was unable to return to work until January 26, 1997. During the time that Scheibel was unable to work, Illinois Farmers paid him weekly income loss benefits of $250, which is the maximum weekly amount provided in the policy and stated in the no-fault act. Illinois Farmers ultimately paid Scheibel $2,250 for nine weeks of income loss. Illinois Farmers also paid Scheibel $23,558 for medical expenses related to both accidents, ultimately attributing $3,558 of the medical expense benefits to the first accident and $20,000 in medical expense benefits to the second accident. The benefits that Illinois Farmers paid Scheibel did not fully reimburse him for the total amount of medical expenses he incurred as a result of both accidents.[1]

Scheibel sought recovery of benefits under his no-fault policy to cover his unreimbursed medical expenses, but Illinois Farmers denied the claim. The parties then arbitrated the factual issues of the case as related to causation. On June 30, 1997, the no-fault arbitrator found that Scheibel's "medical and disability and income" losses were causally related to both accidents, with 35 percent attributable to the first accident and 65 percent attributable to the second. Scheibel then commenced this action in Sherburne County District Court seeking (1) confirmation of the arbitrator's determination that his losses were caused by both accidents, and (2) a judgment against Illinois Farmers for additional benefits plus interest.

The parties brought cross motions for summary judgment. After briefing and oral argument, the district court ordered summary judgment for Illinois Farmers, citing this court's decision in *Great West Cas. Co. v. Northland Ins. Co.*, 548 N.W.2d 279, 281 (Minn.1996). The district court interpreted *Great West* as holding that only one accident can be the cause of an

injury for the purposes of the no-fault act. The court further stated that apportionment of an insured's medical expense benefits between multiple accidents based on attribution of causation is not favored under *Great West.* Therefore, the implication of the court's finding is that, following the second accident, the $20,000 limit for that accident would apply and Scheibel could not apportion his loss between the two accidents to take advantage of a $20,000 policy limit for each accident.

The court of appeals affirmed the district court, stating that, in *Great West,* our court expressed its apparent aversion to apportioning benefits when applying the no-fault act. *See Scheibel v. Illinois Farmers Ins. Co.,* No. C1–98–2097, 1999 WL 391910, at *3 (Minn.App. June 15, 1999). On appeal to this court, Scheibel argues that he is entitled to recover no-fault benefits for both his first and second accidents. More specifically, he seeks reimbursement for medical expenses up to his policy limits for each accident. He also argues that because two accidents caused his injuries, he is entitled to twice the $250 maximum weekly income loss benefits provided for by both his policy and the no-fault act.

I.

A district court shall grant summary judgment when the court determines that "there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. When reviewing a grant of summary judgment, an appellate court must consider (1) whether there are any genuine issues of material fact, and (2) whether the lower court erred in its application of the law. *See Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). When, as in this case, the material facts are not in dispute, we review de novo the lower

---

1. It is unclear from the record what is the exact amount of unreimbursed medical expenses at issue, but at the time of the summary judgment proceeding, Scheibel's counsel indicated that there were approximately $6,500 in unpaid surgery-related bills.

court's application of the law. *See Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

Scheibel's no-fault automobile insurance policy with Illinois Farmers provides basic coverage under the no-fault act. *See* Minn.Stat. §§ 65B.41 to 65B.71 (1998). The no-fault act is intended to (1) relieve uncompensated victims from the economic stress caused by automobile accidents, (2) prevent overcompensation of automobile accident victims, (3) ensure, by the guarantee of prompt payment, that victims seek and receive appropriate medical treatment, (4) speed the administration of justice, ease the burden of litigation on state courts, and create an efficient arbitration system, and (5) prevent automobile accident victims from receiving duplicate recovery. *See* Minn.Stat. § 65B.42.

Under the no-fault act, Scheibel is entitled to basic economic loss benefits which provide "reimbursement for *all* loss suffered through injury arising out of the maintenance or use of a motor vehicle * * *." Minn.Stat. § 65B.44, subd. 1 (emphasis added). The act defines "loss" as "economic detriment resulting from the accident causing the injury * * *." Minn. Stat. § 65B.43, subd. 7. Under the act, Minnesota insurance policies must, at a minimum, provide for up to $20,000 for medical expense loss and $20,000 for income loss. *See* Minn.Stat. § 65B.44, subd. 1(a) – (b). The act also provides that income loss benefits shall not exceed $250 a week. *See* Minn.Stat. § 65B.44, subd. 3. Under his Illinois Farmers policy, Scheibel did not elect to purchase benefits beyond these basic statutory mandates.

It is undisputed that Scheibel's policy with Illinois Farmers was in place at the time of both accidents. Nor does Illinois Farmers dispute the arbitrator's determination that both accidents caused Schei-

bel's injuries. The crux of this dispute lies in the fact that Scheibel was in two accidents, both of which contributed to his injuries, but he has not been fully reimbursed for his losses because Illinois Farmers has attributed his injuries totally to the second accident and applied the per accident policy limit to cap his recovery.

Scheibel argues that, for each accident that is causally related to his injuries, he is entitled to recover up to his policy maximum of $20,000 in medical expense benefits and the policy maximum amount of weekly income loss benefits. In contrast, Illinois Farmers relies on *Great West* to argue that Scheibel is entitled only to the maximum no-fault benefits available for the second accident because all of the unreimbursed expenses for which Scheibel seeks compensation were incurred after that accident. Specifically, Illinois Farmers cites our decision in *Great West* for the proposition that "only *one* accident can be deemed to be the cause of an injury for the purposes of subrogation under section 65B.47." 548 N.W.2d at 281. Further, Illinois Farmers relies on a footnote in *Great West* in which we stated that we disagree with apportioning personal injury protection no-fault benefits and consider benefits "payable by the insurer when the insured incurs a compensable loss." *Id.* at 281 n. 4.

Illinois Farmers errs in relying on *Great West* to argue that injuries caused by two accidents must be deemed to arise entirely from the second accident in determining the amount of benefits payable. *Great West* is distinguishable from this case in two important respects.[2] First, our holding in *Great West* only addressed whether an insurer has a right of subrogation under the no-fault act. Second, the insured in *Great West* was fully compensated for his cumulative injuries caused by the acci-

2. In reaching our holding in *Great West,* we placed importance on the singular form of accident in the no-fault act's definition of "loss." *See Great West,* 548 N.W.2d at 281. However, according to statutory direction on how we should construe Minnesota statutes, "[t]he singular includes the plural; and the plural, the singular * * *." Minn.Stat. § 645.08(2) (1998).

dents. Our holding in *Great West* relates to which insurance company is responsible for reimbursing the insured; that is, who pays. In contrast, the focus of this case is what no-fault insurance coverage will be available to the insured to achieve full reparation for his loss.

■ In addressing the specific issue before us, we first look to the no-fault act for guidance. When interpreting a statute, we must determine whether its language is clear or ambiguous. *See generally Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). Unfortunately, the no-fault act is silent about what happens when multiple accidents cumulatively cause injuries to an insured. Because the statute does not expressly address this issue, we must ascertain the intent of the legislature by other means. *See id.* at 385–86; *see also* Minn.Stat. § 645.16 (1998). In doing so, we will consider the stated purpose of the act. *See* Minn.Stat. § 645.16(4). Therefore, in order to determine what no-fault insurance coverage will be available to Scheibel, we seek guidance in the stated purposes of the no-fault act.

We have held that the primary purpose of the no-fault act is to promote full but not over-compensation of injured persons. *See Pfeffer v. State Auto. & Cas. Underwriters Ins. Co.*, 292 N.W.2d 743, 747–48 (Minn.1980). We also have held that an insurer's subrogation interest is subordinate to this legislative policy of the no-fault act of providing full compensation to injured persons. *See Westendorf v. Stasson*, 330 N.W.2d 699, 703 n. 2 (Minn.1983) (citing *Pfeffer*, 292 N.W.2d 743 (Minn. 1980); *Milbank Mut. Ins. Co. v. Kluver*, 302 Minn. 310, 313–15, 225 N.W.2d 230, 232–33 (1974)). When considering the issue of how much an insured is entitled to recover as opposed to who pays, it is critical that we keep this over-arching policy of full compensation in mind.

Despite the fact that *Great West* is distinguishable from the case before us, like *Pfeffer* and *Westendorf,* it does enunciate key principles that assist us in discerning the purpose of the no-fault act and how the act should apply here. We noted in *Great West* that the no-fault act is intended to foster less expensive and less complex litigation and to relieve uncompensated victims from severe economic distress by providing prompt payment. 548 N.W.2d at 281; *see also* Minn.Stat. § 65B.42. We went on to note that subrogation claims by insurers in multiple accident cases do not further these goals. *See Great West,* 548 N.W.2d at 281. Therefore, consistent with the intent of the no-fault act, and because the no-fault act does not articulate a right of subrogation, we held that there is no right of subrogation. *See id.* Further, although it was not a part of our holding, we did state in a footnote that we disagree with apportioning personal injury protection benefits and that we consider benefits to be payable by the insurer when the insured incurs a compensable loss. *See id.* at 281 n. 4.

We emphasized in *Great West* that the no-fault act is intended to promote the efficient administration of justice and provide an insured prompt payment. *Id.* at 281. Here, as in *Great West,* we must follow these mandates of the no-fault act, but we must do so in the context of deciding how much the insured is entitled to recover. Under the no-fault act, Scheibel is entitled to "reimbursement for *all* loss suffered through injury arising out of the maintenance or use of a motor vehicle * * *." Minn.Stat. § 65B.44, subd. 1 (emphasis added).

■ Illinois Farmers does not dispute that if Scheibel had been in two accidents and suffered distinct and separable injuries, medical expenses from each injury would have been separately compensable up to the policy maximum of $20,000 for each accident. We see no reason why the same principles should not apply when the second accident exacerbates an injury sustained in an earlier accident. It would be an absurd result to cut off recovery for an injury from the first accident merely be-

cause an intervening accident aggravates the same injury. As previously noted, the purpose of the no-fault act is to fully compensate the insured to the extent of the mandated insurance.

■ It is undisputed that Scheibel's injuries were 35 percent attributable to the first accident and 65 percent attributable to the second. Because both accidents cumulatively caused Scheibel's injuries and because his medical expenses are not fully reimbursed under the policy limits attributable to the second accident, we hold that Scheibel is entitled to additional reimbursement under his policy with Illinois Farmers for losses attributable to the first accident. Consistent with our language in *Great West,* Illinois Farmers, as the insurer on the second accident, is obligated to pay the maximum policy limit of $20,000 for Scheibel's injuries regardless of the extent to which each accident contributed to the injuries. Further, to the extent that, absent the second accident, Scheibel would still have a viable claim under his Illinois Farmers policy for injuries suffered in the first accident, he is entitled to payment for medical expenses attributable to the first accident that remain unreimbursed after the $20,000 policy limit for the second accident has been paid. However, Scheibel is entitled to recover only that unreimbursed portion of his total medical expenses attributable to the first accident, up to the $20,000 policy limit applicable to the first accident. Conversely, he cannot recover for any loss attributable to the second accident from coverage for the first accident.[3]

## II.

We next address Scheibel's argument that he is entitled to $500 in weekly income loss benefits—twice the $250 maximum weekly income loss benefits provided by the no-fault act. The no-fault act, under

basic economic loss benefits, provides for a maximum of $20,000 for income loss, replacement services loss, funeral expense loss, survivor's economic loss, and survivor's replacement services loss arising out of the injury to any one person. *See* Minn. Stat. § 65B.44, subd. 1. The act further requires that "[d]isability and income loss benefits shall provide compensation for 85 percent of the injured person's loss of present and future gross income from inability to work proximately caused by the nonfatal injury *subject to a maximum of $250 per week.*" Minn.Stat. § 65B.44, subd. 3 (emphasis added).

■ In arguing that he is entitled to income loss benefits of twice the maximum of $250 a week, Scheibel fails to recognize the impossibility of being totally out of work twice. There is a distinction between medical expenses and income loss in the multiple accident context. Multiple accidents may exacerbate an injury and result in further medical expenses. However, if one accident causes a total inability to work, then income loss benefits are set. Additional accidents cannot add to the weekly loss of income from not being able to work. Accordingly, the statutory cap on per week wage loss benefit applies regardless of the number of accidents. Therefore, we conclude that although the no-fault act generally seeks to protect accident victims, it also evinces a clear intent to limit the amount of weekly income loss benefits. *See* Minn.Stat. § 65B.44, subd. 3. We therefore hold that under the no-fault act, Scheibel is entitled to a maximum of $250 per week in income loss benefits.

Affirmed in part, reversed in part, and remanded for further proceedings.

---

**3.** This formula for the amount of no-fault insurance coverage available to Scheibel to achieve full reparation does rely to some extent on apportionment, which is a concept that we rejected in *Great West.* However, this formula retains the bright line of liability that we articulated in *Great West.*