**Tammara Stimpert SCHONS, et al., Petitioners, Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.**

**No. C6–99–1246.**

Supreme Court of Minnesota.

Feb. 8, 2001.

Grannis & Hauge, P.A., Michael J. Dwyer, Virginia A. Dwyer, Eagan, for Appellants.

Meagher & Geer, P.L.L.P., Katherine A. McBride, Minneapolis, for Respondent.

Schwebel, Goetz & Sieben, P.A., Sharon L. Van Dyck, Minneapolis, for Amicus Curiae Minnesota Trial Lawyers.

## OPINION

BLATZ, Chief Justice.

In this case, we are required to determine the proper application of Minn.Stat. § 65B.49, subd. 3a(5) (2000), of Minnesota's No Fault Automobile Insurance Act (the "No Fault Act") to the underinsured motorist (UIM) benefits claim of a passenger injured in an automobile accident involving two negligent drivers. Appellant Tammara Stimpert Schons seeks UIM benefits from her automobile policy with respondent State Farm Mutual Automobile Insurance Company because her damages exceed the UIM and liability benefits available to her under the negligent drivers' insurance policies. Schons now challenges summary judgment for State Farm, arguing that the district court and court of appeals erred in concluding that Schons cannot recover UIM benefits from her own policy because her $50,000 UIM limit is no greater than her host driver's $50,000 UIM limit. We affirm.

The facts of this case are not disputed. Schons was a passenger in Rebecca Vogl's automobile on January 17, 1997, when drifting snow caused the automobile to collide head-on with Donna Bjorklund's automobile. Schons suffered extensive physical injury and lost wages. Both drivers were negligent and both were underinsured.

Vogl had automobile insurance through State Farm with $50,000 each in liability and UIM coverage. Bjorklund had $50,000 in liability coverage through Austin Mutual. Schons had $50,000 in UIM coverage through State Farm on an automobile not involved in the accident. In settlement of her bodily injury claims, Schons received $50,000 in liability benefits

from Vogl's State Farm policy and $48,000 in liability benefits from Bjorklund's Austin Mutual policy.

Because Schons' damages exceeded the two drivers' liability limits, Schons sought UIM benefits from Vogl's policy. Vogl's insurer paid Schons $50,000 for Bjorklund's underinsured negligence, but Vogl's policy excluded UIM coverage for Vogl's negligence because her insurer had already paid liability benefits.

Despite this payment, Schons' damages still exceeded the amount of liability and UIM benefits she received. Schons therefore sought $50,000 in additional UIM benefits from her own State Farm policy to cover Vogl's underinsured negligence. State Farm denied coverage, claiming that section 65B.49, subd. 3a(5) of the No Fault Act prohibited Schons from receiving UIM benefits under her own policy because she had received maximum benefits from Vogl's policy and because the $50,000 UIM limit on Schons' policy did not exceed Vogl's $50,000 UIM limit. Schons then filed suit against State Farm in Lyon County District Court. The parties brought cross-motions for summary judgment. The district court agreed with State Farm's reasoning and granted its summary judgment motion while denying Schons'. The court of appeals affirmed in *Schons v. State Farm Mutual Automobile Insurance Co.*, 604 N.W.2d 125, 128 (Minn. App.2000).

## I.

■ On appeal from summary judgment, this court reviews whether there are any genuine issues of material fact and whether the lower courts erred in their application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The facts here are undisputed, so the only issue is the correct application of the No–Fault Act. Statutory interpretation is a question of law subject to de novo review. *Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985).

■ Minnesota Statutes § 65B.49, subd. 3a(5) is the part of the No Fault Act that sets forth the order in which an injured party should seek UIM coverage from relevant policies. *Thommen v. Ill. Farmers Ins. Co.*, 437 N.W.2d 651, 653 (Minn.1989). Section 65B.49, subd. 3a(5) states:

If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle. However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured. The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.

Minn.Stat. § 65B.49, subd. 3a(5). The parties agree that as an unrelated passenger in Vogl's motor vehicle, Schons is not "an insured" with respect to this vehicle under the No–Fault Act, and that Schons' uncompensated damages remain greater than the $50,000 she seeks from her insurer. Therefore, Schons is entitled to receive "excess [UIM] insurance protection" from her policy "to the extent by which the limit of liability for like coverage applicable to any one [of Schons' own motor vehicles] exceeds the limit of liability of the coverage available to [Schons from Vogl's vehicle]." *Id.* This part of subdivision 3a(5) is the primary subject of this appeal.

Schons urges this court to reverse summary judgment for State Farm and hold that UIM benefits paid under Schons' poli-

cy would not be "excess insurance protection" under subdivision 3a(5) because the UIM benefits paid under Vogl's policy covered Bjorklund's—not Vogl's—underinsured negligence. In essence, Schons argues that where, as here, there are two underinsured tortfeasors, the No–Fault Act allows the injured passenger to look to the host driver's policy as primary coverage for the second driver's underinsured negligence, and to the passenger's own policy as primary coverage for the host driver's underinsured negligence. Schons therefore claims that because subdivision 3a(5) is inapplicable, she may collect the full extent of her own UIM coverage regardless of whether her UIM limits exceed Vogl's. This argument is unpersuasive.

First, we note that the reasoning set forth in the court of appeals cases cited by the parties does not directly address the issue before us. Schons relies on *Davis v. American Family Mutual Insurance Co.*, 521 N.W.2d 366 (Minn.App.1994), and *Lahr v. American Family Mutual Insurance Co.*, 528 N.W.2d 257 (Minn.App.1995), for the proposition that UIM coverage under Schons' own policy is not "excess" to UIM benefits received from Vogl's insurer for Bjorklund's negligence. In *Davis*, the court of appeals held that subdivision 3a(5) did not prohibit an injured passenger in a *single-car* accident from recovering UIM benefits under his own policy where an exclusion in the driver's policy prohibited the passenger from receiving UIM benefits from the driver. 521 N.W.2d at 369–70. Although the court reasoned that the passenger's own UIM coverage was not "excess insurance protection" because the passenger did not receive primary UIM benefits from the driver, the court also noted that subdivision 3a(5) applies to an injured passenger "only when that person seeks UIM benefits under his or her own policy after already qualifying for UIM benefits from another source." *Davis*, 521 N.W.2d at 369–70. Schons was involved in a two-car accident and received UIM benefits "from another source"—i.e., from Vogl's policy. Consequently, the reasoning set forth in *Davis* does not apply to the issue before us.

The court of appeals' reasoning in *Lahr v. American Family Mutual Insurance Co.* is equally inapplicable. The court held that subdivision 3a(5) did not prohibit Lahr, an injured passenger who received UIM benefits from her own policy for the host driver's negligence, from recovering UIM benefits from her host driver's policy for the second driver's negligence. *See Lahr*, 528 N.W.2d at 260. Although Lahr potentially could recover UIM benefits both from her own policy and from the host driver's policy, the UIM limits on Lahr's policy exceeded those of the host driver's policy by more than the amount Lahr received from her own insurer. *Id.* at 258. Thus, the court of appeals did not decide whether Lahr could recover from both policies if her own UIM policy limits did not exceed the limits of her host driver's policy.

In affirming summary judgment for State Farm in the instant case, the court of appeals relied heavily on its decision in *Jirik v. Auto–Owners Insurance Co.*, 595 N.W.2d 219 (Minn.App.1999), *rev. granted and remanded on other grounds* (Minn. Sept. 14, 1999). In *Jirik*, Danielle, a minor child, was injured when her mother's automobile collided with a truck. *Id.* at 220. Danielle's parents were divorced and Danielle apparently was insured under both parents' policies. *Id.* Her mother's policy paid UIM benefits to Danielle for the other driver's underinsured negligence, but Danielle sought additional UIM coverage from her father's policy for her mother's underinsured negligence. *Id.* at 221. Although Danielle was "an insured" under her mother's policy pursuant to the No–Fault Act, she argued that subdivision 3a(5) did not prohibit additional recovery because her father's policy would provide primary UIM coverage, not excess insurance protection, for her mother's underinsured negligence. *Jirik*, 595 N.W.2d at 222–23; *see* Minn.Stat. § 65B.49, subd.

3a(5) ("[I]f the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection* * *.") (emphasis added). The court of appeals rejected Danielle's argument, holding that she could not seek benefits from her father's policy because she *was* an insured under the policy covering the host vehicle. *Jirik*, 595 N.W.2d at 223.

In *Schons*, the court of appeals cited *Jirik* as precedent for rejecting the claim that Schons sought primary, not excess, UIM coverage from her own insurer. *Schons v. State Farm Mut. Auto. Ins. Co.*, 604 N.W.2d 125, 128 (Minn.App.2000). *Jirik*, however, did not involve the statutory language relevant here. Because the injured passenger in *Jirik* was "an insured" under the host driver's policy, the second sentence of subdivision 3a(5) rendered her ineligible for UIM coverage beyond that available from the host driver. Minn.Stat. § 65B.49, subd. 3a(5). Thus, *Jirik* does not resolve the issue in Schons' case, which centers on the third sentence of subdivision 3a(5).

■ Having determined that the reasoning set forth in the cases cited by the parties and lower courts does not address the specific question before us, we turn to subdivision 3a(5) itself. The function of subdivision 3a(5) is to connect an injured passenger's total UIM benefit recovery to the limit specified for the motor vehicle the passenger occupied. *Hanson v. Am. Family Mut. Ins. Co.*, 417 N.W.2d 94, 96 (Minn. 1987) (recognizing that the 1985 amendments to the No–Fault Act "reflect a broad policy decision to tie underinsured motorist and other coverage to the particular vehicle involved in an accident"). An

exception to this general rule occurs where an injured passenger has preselected a greater level of UIM coverage than the amount covering the host vehicle. *Becker v. State Farm Mut. Auto. Ins. Co.*, 611 N.W.2d 7, 13 (Minn.2000). Because Schons' and Vogl's UIM limits are the same, Schons is not entitled to recover additional UIM benefits from her own insurer .[1]

This interpretation is supported by the third sentence of subdivision 3a(5), which specifically renders it irrelevant whether UIM benefits were paid for Vogl's or Bjorklund's underinsured negligence so long as Vogl's UIM coverage was "available" to Schons. Minn.Stat. § 65B.49, subd. 3a(5) (mandating a comparison between the UIM coverage limits on any motor vehicle owned by the injured passenger and the "limit of liability of the coverage *available* to the injured person from the occupied motor vehicle.") (emphasis added); *see also* Theodore J. Smetak, *Underinsured Motorist Coverage in Minnesota: Old Precedents in a New Era*, 24 Wm. Mitchell L.Rev. 857, 939 (1998) ("The [excess] coverage provision was designed to allow policy-holders the opportunity to pre-select the minimum level of insurance coverage that would be *available for any given accident.*" (emphasis added)). Here, it is undisputed that $50,000 of UIM benefits was available to Schons from Vogl's policy, albeit for Bjorklund's underinsured negligence.

Although Schons might have recovered more than $50,000 if she had preselected a higher level of UIM coverage, she could not reasonably expect to recover more than the $50,000 of UIM coverage for which she paid premiums. Schons re-

1. Relying on subdivision 3a(5)'s statement that excess insurance protection is available "only to the extent by which the limit of liability for *like* coverage applicable to [the insured's motor vehicle] exceeds the limit of liability of the coverage available * * * from the occupied motor vehicle" (emphasis added), Schons also argues that she is entitled to UIM benefits from her own insurer because

the $50,000 her insurer would pay for Vogl's negligence is not *like* the $50,000 Vogl's insurer paid for Bjorklund's negligence. A plain reading of subdivision 3a(5) indicates, however, that "like coverage" simply refers to UIM coverage. Therefore, the statute only requires a comparison between UIM coverage limits on the host driver's vehicle and UIM limits on the passenger's own vehicle.

ceived exactly $50,000 coverage from her host driver's insurer. Regardless of whose underinsured negligence Vogl's UIM payments covered, the plain text of subdivision 3a(5) prohibits additional recovery under these facts because Schons' UIM coverage limits do not exceed the limit of UIM coverage "available * * * from the occupied motor vehicle." Consequently, the district court's grant of summary judgment for State Farm is consistent with the text of subdivision 3a(5) and with the goal of connecting a passenger's recoverable UIM benefits to the host vehicle's policy unless the passenger's preselected level of UIM coverage exceeds the host vehicle's UIM limits.

## II.

■ Amicus curiae, the Minnesota Trial Lawyers Association, argues that subdivision 3a(5) is only a priority scheme that does not eliminate coverage available under Minn.Stat. § 65B.49, subd. 4a (2000). Subdivision 4a provides:

> With respect to underinsured motorist coverage, the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle. If a person is injured by two or more vehicles, underinsured motorist coverage is payable whenever any one of those vehicles meets the [statutory] definition of underinsured motor vehicle * * *. However, in no event shall the underinsured motorist carrier have to pay more than the amount of its underinsured motorist limits.

Minn.Stat. § 65B.49, subd. 4a.

Although neither party discusses the effect of subdivision 4a on the instant case, amicus argues that subdivision 4a "clearly contemplates" the possible involvement of two or more vehicles in a single accident and only excuses an insurer from paying UIM benefits greater than the policyholder's UIM limits. It is not disputed that Schons' insurer is not being asked to pay

more than Schons' $50,000 UIM policy limits. Amicus therefore argues that, regardless of subdivision 3a(5), primary UIM coverage is available from Schons' policy to cover Vogl's underinsured negligence.

Despite this characterization of the relationship between subdivisions 3a(5) and 4a, subdivision 4a's historical context indicates that the subdivision is largely irrelevant to the priority scheme in subdivision 3a(5). Prior to 1989 amendments, subdivision 4a stated:

> With respect to underinsured motor vehicles, the maximum liability of an insurer is the lesser of the difference between the limit of underinsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or the amount of damages sustained but not recovered.

Minn.Stat. § 65B.49, subd. 4a (1988). Under this statutory format, an insurer liable for underinsured motorist benefits had a maximum liability of the policy's UIM limits minus *any* amount already paid by or on behalf of the at-fault party. *Johnson v. Am. Family Mut. Ins. Co.*, 426 N.W.2d 419, 422 n. 1 (Minn.1988). Thus, UIM policy limits were reduced by other benefits paid to an injured party even if the benefits paid were not UIM benefits. This was known as the "limits less paid" approach. *Neuman v. State Farm Mut. Auto. Ins. Co.*, 492 N.W.2d 530, 533 (Minn. 1992).

In 1989, subdivision 4a was amended to convert the "limits less paid" approach into an "add-on" approach. *Neuman*, 492 N.W.2d at 531 n. 3. To accomplish this goal, the statute as amended in 1989 entitles an injured party to the full extent of a policy's UIM coverage without having to subtract the amount already paid in liability benefits. Minn.Stat. § 65B.49, subd. 4a (2000). The statute also makes UIM coverage payable, but not necessarily required of a particular insurer, if any single automobile is underinsured in a multi-vehi-

cle accident. *Id; see also* 1 Michael K. Steenson, *Minnesota No–Fault Automobile Insurance,* 209 (2d ed., LEXIS® Law Publ'g Issue 9 1999). Finally, the statute ensures that a UIM insurer will not have to pay more than its policyholder's UIM limits. *See* Minn.Stat. § 65B.49, subd. 4a. Despite amicus' arguments that "subdivision 4a articulates the scope of the coverage available under any given policy," subdivision 4a only ensures that an insurer will not have to pay more than the lesser of the injured party's uncompensated damages or the UIM limits on the insured's policy. Subdivision 4a is therefore separate from subdivision 3a(5)'s priority and limitation scheme.

Accordingly, we hold that subdivision 3a(5) prohibits Schons from recovering UIM benefits from her insurer. We also conclude that subdivision 4a does not entitle Schons to such recovery. The decision of the court of appeals is affirmed.

Affirmed.

PAGE, J., (concurring specially).

I concur in the result. I write separately because I believe that the court's analysis is not only faulty, but unnecessary. This case involves a claim for UIM benefits under a policy of insurance issued to Schons for injuries received while an occupant in an underinsured motor vehicle involved in an accident with a second underinsured motor vehicle. Her injuries were caused by the negligence of both drivers involved in the accident. Schons received the occupied vehicle's liability policy limits of $50,000 and $48,000 from the $50,000 liability policy covering the second vehicle. Schons also received $50,000 in UIM bene-

fits from the occupied vehicle's policy because of the second vehicle's UIM status. Because the occupied vehicle's insurance policy precluded Schons from receiving any UIM benefits based on its UIM status, Schons seeks to recover UIM benefits from a policy of insurance covering her own vehicle.

The court holds that Minn.Stat. § 65B.49, subd. 3a(5) (2000), precludes recovery under Schons' insurance policy because the UIM limits under her policy do not exceed the limit of UIM benefits available from like coverage contained in the occupied vehicle's policy. Section 65B.49, subdivision 3a(5), sets out when a person injured due to the negligence of the driver of an underinsured motor vehicle is entitled to excess insurance protection.[1] Under that section, "excess insurance protection is limited to * * * the extent by which the limit of liability for like coverage * * * exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle." In this case, the occupied motor vehicle's insurance policy precludes Schons from recovering UIM benefits for the occupied vehicle's underinsured status. Thus, there is no like coverage available for Schons' automobile insurance policy to exceed and, therefore, the excess insurance protection provisions of Minn.Stat. § 65B.49, subd. 3a(5), are inapplicable to this case.

Moreover, the result reached by the court fails to meet the legislative purposes underlying the enactment of the No-Fault Act. Denying people like Schons UIM benefits from the policy covering their own vehicle does absolutely nothing to "relieve uncompensated victims from the economic stress caused by automobile accidents."[2]

---

**1.** "However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured." Minn.Stat. § 65B.49, subd. 3a(5).

**2.** The No–Fault Act's stated purposes are "to (1) relieve uncompensated victims from the economic stress caused by automobile accidents, (2) prevent overcompensation of automobile accident victims, * * * and (5) prevent automobile accident victims from receiving duplicate recovery." *Scheibel v. Ill. Farmers*

The act's other purposes are not implicated. Schons has not received any payment for the underinsured status of the vehicle she was occupying at the time of the accident. Further, there is no source for such a payment other than the UIM benefits Schons purchased for her vehicle. Therefore, there is no danger of a duplicate recovery were she to receive UIM benefits under her policy. Further, there is no danger that she would be overcompensated because her damages exceed the amount available under all possible sources of insurance coverage, including the UIM benefits being sought here. Finally, there is no risk that Schons' UIM coverage would be effectively converted into liability coverage. *Cf. Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 291–92 (Minn.1983) (upholding insurance policy language as properly preventing the conversion of UIM coverage into third-party liability coverage).

In addition to the legislative purposes being frustrated, it appears that the premium Schons paid for UIM coverage for her vehicle was wasted. As the occupant of a vehicle that had $50,000 in UIM coverage, she was entitled to and did receive the benefit of that coverage for the underinsured status of the other vehicle involved in the accident. Although Schons purchased UIM coverage, she will receive no UIM benefits to compensate her for the injuries she received as a result of the negligence of the driver of the occupied underinsured vehicle. Thus, having paid the premium, Schons gets nothing for it under these circumstances.

Because section 65B.49, subdivision 3a(5), does not apply, I believe that Schons, on the facts presented by this case and the purposes underlying the No Fault Act, absent any other provision precluding recovery, is entitled to recover UIM benefits from her automobile insurance policy.

Analysis of subdivision 3a(5) is unnecessary, however, because the outcome of this case is controlled by Minn.Stat. § 65B.49, subd. 3a(6) (2000), which expressly precludes recovery on these facts. Subdivision 3a(6) provides:

> Regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy, or premiums paid, in no event shall the limit of liability for uninsured and underinsured motorist coverages for two or more motor vehicles be added together to determine the limit of insurance coverage available to an injured person for any one accident.

Minn.Stat. § 65B.49, subd. 3a(6). The language of this provision is clear and unambiguous.[3] UIM coverages for two vehicles may not "be added together to determine the limit of insurance coverage available to an injured person for any one accident." *Id.* Because Schons seeks to add together the UIM coverage from the occupied vehicle with that of her own vehicle to "determine the limit of insurance coverage available," *id.*, to her from the accident, subdivision 3a(6) operates to preclude recovery.

*Ins. Co.*, 615 N.W.2d 34, 37 (Minn.2000) (citing Minn.Stat. § 65B.42 (2000)).

**3.** We have recognized that subdivision 3a(6) was enacted in an effort to eliminate "stacking" of coverages. *Broton v. W. Nat. Mut. Ins. Co.*, 428 N.W.2d 85, 88 (Minn.1988). "Stacking" refers to applying the coverage limits on multiple vehicles under which the injured person is insured to one accident, *Wasche v. Milbank Mut. Ins. Co.*, 268 N.W.2d 913, 917 (Minn.1978), which is not what

Schons seeks. While the elimination of stacking may have been the purpose behind subdivision 3a(6), "The letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2000). By its terms, subdivision 3a(6) does much more than eliminate stacking. It expressly prohibits adding the limits of liability for *any* two or more motor vehicles to determine the limit of underinsured or uninsured coverage.