STRAS, Justice
(dissenting).
The court exalts policy over text when it concludes, contrary to the plain language of Minn.Stat. § 65B.49, subd. 3a(5) (2014), that Cody Sleiter was entitled to recover excess underinsured motorist (“UIM”) benefits from his family’s automobile insurer, American Family Mutual Insurance Company (“American Family”). The facts of this case are tragic, and there is no question, as the court observes, that Sleiter and his family did not receive the amount of excess UIM benefits that they expected from their own insurance policy.
Nevertheless, as the first sentence of Minn.Stat. § 65B.49, subd. 3a(5), makes clear, the disputed statutory phrase, “limit of liability of the coverage available,” refers to the UIM-coverage limit “specified for [the occupied vehicle],” which in this case was the $1,000,000 limit of the school bus in which Sleiter was a passenger. Because the Sleiter family’s UIM-coverage limit of $100,000 did not “exceed[] the limit of liability of the coverage available” from the school bus’s policy, Sleiter was not entitled to recover excess UIM benefits from American Family. Minn.Stat. § 65B.49, subd. 3a(5) (emphasis added). Based on the plain and unambiguous language of Minn.Stat. § 65B.49, subd. 3a(5), I respectfully dissent.
I.
“As a general matter, UIM coverage is triggered when a tortfeasor’s liability coverage is insufficient to fully compensate the injured person for the actual damages *29 sustained in an accident.” Latterell v. Progressive N. Ins. Co., 801 N.W.2d 917, 922 (Minn.2011). In this case, Sleiter received $1,600.33 from the at-fault vehicle’s policy and $34,543.70 in UIM benefits from the school bus’s policy, which together did not fully compensate him for the actual damages he suffered in the accident. He then turned to his family’s policy with American Family to recover a portion of the uncompensated damages. Under Sleiter’s theory, he was entitled to recover $65,456.30 in excess UIM benefits from American Family, which was the difference between the UIM-coverage limit of $100,000 on his family’s policy and the amount of UIM benefits he actually recovered under the school bus’s policy.
Sleiter’s theory presents a question of priority and allocation of damages among UIM insurers. As the court observes, the legal question presented turns on Minn. Stat. § 65B.49, subd. 3a(5), which states as follows:
If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and un-derinsured motorist coverages available to the injured person is the limit specified for that motor vehicle.
However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured.
The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.
The first sentence of the statute accomplishes two things. First, it “operates ‘to require the injured occupant to look first and exclusively to the policy limits on the occupied vehicle’ for UM or UIM benefits.” West Bend Mut Ins. Co. v. Allstate Ins. Co., 776 N.W.2d 693, 699 (Minn.2009) (quoting Vue v. State Farm Ins. Cos., 582 N.W.2d 264, 267 (Minn.1998)). Second, it indicates that the key language in this case, the “limit of liability ... [of] coverages available,” refers to the “limit [of UIM coverage] specified” for the occupied vehicle, no matter how many people occupied that vehicle at the time of an accident. See Schons v. State Farm Mut. Auto. Ins. Co., 621 N.W.2d 743, 747 & n. 1 (Minn.2001).
The second sentence of the statute creates a priority scheme among UIM insurers by establishing that the insurance policy for the occupied vehicle provides the primary coverage and that other policies “in which the injured party is otherwise insured” provide secondary coverage. Minn.Stat. § 65B.49, subd. 3a(5). The third sentence, which contains the disputed language in this case, explains how to calculate the “coverage available” under secondary policies. Repeating language from the first sentence, the third sentence states that secondary UIM coverage is available to an injured person “to the extent by which the limit of liability” of the secondary policy exceeds “the limit of liability of coverage available to the injured person from the occupied motor vehicle.” Minn.Stat. § 65B.49, subd. 3a(5) (emphasis added). In other words, as we have concluded, the third sentence simply “requires a comparison between UIM coverage limits on the host driver’s vehicle and UIM limits on the passenger’s own vehicle,” the former of which is determined by the first *30 sentence of the statute. Schons, 621 N.W.2d at 747 n. 1 (emphasis added).
In this case, the amount calculated under the first sentence, which required a determination of the occupied vehicle’s “limit of liability for uninsured and under-insured motorist coverages available to the injured person,” was the school bus’s UIM policy limit of $1,000,000. Minn.Stat. § 65B.49, subd. 3a(5). According to the second sentence, Sleiter could then look to his family’s insurance policy for “excess insurance protection” because he was not a named insured under the school bus’s policy. Id.; see also West Bend, 776 N.W.2d at 703 (holding that the term “insured” in Minn.Stat. § 65B.49, subd. 3a(5) refers to the “named insured” on a policy). However, under the third sentence, the “extent by which” the secondary policy’s UIM limits exceeded the “limit of liability of the coverage available to the injured person from the occupied motor vehicle” determined Sleiter’s entitlement to “excess insurance protection.” Here, because the $100,000 limit of coverage available in the secondary insurance policy did not exceed the $1,000,000 limit of coverage available in the primary insurance policy, Sleiter was not entitled to “excess insurance protection.” Minn.Stat. § 65B.49, subd. 3a(5).
II.
In concluding otherwise, the court fails to interpret Minn.Stat. § 65B.49, subd. 3a(5), as a unified whole, gives no meaning to the repeated use of the word “limit” in the statute, defines materially identical phrases in the first and third sentences of the statute differently, and effectively overrules our definitive interpretation of the statute from Schons. The court also fashions an ambiguity based on its unsupported hypothesis that the Legislature simply failed to consider how the statute would operate in accidents involving multiple injured parties.
Rather than read the statute as a whole, as our case law instructs us to do, the court chops the statute into three independent parts. See Am. Family Ins. Grp. v. Schroedl, 616 N.W.2d 273, 277 (Minn.2000) (instructing courts to read and interpret statutes as a whole in order to avoid conflicting interpretations). The court’s artificial dissection of the statute leads it to conclude that it is unable “to identify the ‘coverage available’ in a multi-victim accident.” Inexplicably, however, the court simply refuses to look to the statute’s first sentence, which answers the precise question posed by the court of how to identify the limit of the coverage available from the occupied vehicle in an accident involving multiple victims.
The court then constructs an ambiguity by criticizing the Legislature for failing to “end[ ] the third sentence” with the phrase “exceeds the limit of liability specified for the occupied motor vehicle.” According to the court, the Legislature’s failure to add the suggested language means that it must have failed to consider how the statute operates in accidents involving multiple victims. It is quite a logical leap to hypothesize, without any objective evidence, that the Legislature failed to consider the exceedingly common situation in which a car accident results in injuries to multiple people. But even if the court is correct that the Legislature did not fully consider the various permutations of the statute, including how it operates in accidents involving multiple victims and multiple insurers, the court fails to explain why the additional language was necessary. After all, the court’s suggested language merely repeats the first sentence of the statute, which makes clear that, for the occupied vehicle, the “coverage[] available to the injured person is the limit specified for *31 that motor vehicle.” Minn.Stat. § 65B.49, subd. 3a(5) (emphasis added).
The court’s analysis is even more puzzling "when it suggests — contrary to our canons of construction — that American Family’s interpretation of the statute is reasonable in the context of a single-victim accident, but that it is untenable when applied to accidents involving multiple victims. The court seems to suggest that the disputed provision requires one interpretation in single-victim accidents, but an entirely different interpretation in multi-vic-tim accidents. Yet in interpreting the same statute in a recent case, we held that “the meaning of ‘insured’ in subdivision 3a(5) does not change depending on the context.” West Bend, 776 N.W.2d at 703; see also Langston v. Wilson McShane Corp., 776 N.W.2d 684, 690 (Minn.2009) (“[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.” (quoting Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932))). Here, however, the court adopts a contrary view, concluding that the phrase “ ‘coverage available’ in the first sentence [has] a separate meaning from the same phrase in the third sentence” because of the differing contexts of the two sentences. Nothing in the statute suggests that the meaning of the word “insured” is static, as we held in West Bend, but that the meaning of the accompanying phrase “coverage available” can change.
The foregoing observation leads to the final problem with the court’s decision: it overrules, or at least seriously casts doubt on, our definitive interpretation of Minn. Stat. § 65B.49, subd. 3a(5), from Schons v. State Farm Mut. Auto. Ins. Co., 621 N.W.2d 743, 747 & n. 1 (Minn.2001). The court is correct that Schons involved a single-victim car accident. However, nowhere in Schons did we hint, much less say, that our interpretation of Minn.Stat. § 65B.49, subd. 3a(5), depended on the fact that the accident involved only a single victim. Instead, we stated, without qualification, that the function of the third sentence “is to connect an injured passenger’s total UIM benefit recovery to the limit specified for the motor vehicle the passenger occupied.” Schons, 621 N.W.2d at 747 (emphasis added). We further explained that the exception to “this general rule occurs where an injured passenger has preselected a greater level of UIM coverage than the amount covering the host vehicle.” Id. We then removed all doubt regarding the operation of the statute when we declared, in an explanatory footnote, that “the statute only requires a comparison between UIM coverage limits on the host driver’s vehicle and UIM limits on the passenger’s own vehicle.” Id. at 747 n. 1 (emphasis added). The plain-language interpretation I would adopt today is not only consistent with Schons, it is the interpretation from Schons.
For its part, the court' does not claim that its interpretation of Minn.Stat. § 65B.49, subd. 3a(5), is consistent with Schons. Instead, it suggests that we did not consider in Schons what “coverage available” means in a multi-victim accident, a suggestion that hardly seems reasonable in light of the categorical language we used in that case. Therefore, the only conclusion I can reach is that the court’s interpretation in this case effectively overrules the definitive interpretation we adopted in Schons. As we have stated, “[t]he doctrine of stare decisis instructs us to adhere to our former decisions in order, to promote the stability of the law and the integrity of the judicial process.” Walsh v. U.S. Bank, N.A., 851 N.W.2d 598, 604 (Minn.2014). In my view, the court’s decision today is an indefensible departure from the principle of stare decisis.
*32 III.
For the foregoing reasons, I respectfully dissent.