Theresa Mary **MITSCH**, Appellant,

v.

**AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY,** Respondent.

No. A06–1626.

Court of Appeals of Minnesota.

July 31, 2007.

Sharon L. Van Dyck, James G. Wein-meyer, Schwebel, Goetz & Sieben, P.A., Minneapolis, MN, for appellant.

Klay C. (KC) Ahrens, Elizabeth E. Ca-turia, Hellmuth & Johnson, PLLC, Eden Prairie, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge; LANSING, Judge; and HUDSON, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges the district court's decision to dismiss on summary judgment her claim seeking underinsured-motorist (UIM) benefits under an insurance policy issued by respondent American National Property and Casualty Company (AN-PAC). Because (1) the application of that covered policy's reducing clause in this context violates Minn.Stat. § 65B.49, subd. 4a (2006), and (2) appellant's claim for UIM benefits does not result in a conversion of first-party coverage to third-party coverage, we conclude that the district court erred in granting summary judgment to ANPAC. We therefore reverse and remand.

## FACTS

On the afternoon of September 23, 2002, appellant Theresa Mary Mitsch was riding as a passenger on a motorcycle driven by her husband, Thomas Mitsch (Thomas). As they were traveling on the highway, a truck driven by Joseph Henry Frank (Frank) "invaded" their lane of traffic, forcing Thomas to swerve off the road and into a ditch. Appellant, who was thrown from the motorcycle, sustained significant injuries. Thomas conceded that he was driving his motorcycle at an excessive speed for the road conditions and thus acknowledged that the accident was partially due to his negligence. Frank also conceded that the accident was due, in part, to his negligence.

At the time of the accident, Frank was insured by Austin Mutual Insurance Company (Austin Mutual) with a liability limit of $30,000 per person. Thomas had coverage on his motorcycle with ANPAC that provided liability and UIM limits of $250,000 per person. Because appellant is the spouse of Thomas, the named ANPAC insured, she is an insured under that policy.

Appellant settled her liability claim against Frank for $30,000—the liability limit under the Austin Mutual policy. Appellant also settled her liability claim against Thomas for the liability limit on the ANPAC policy of $250,000. But because these amounts were not sufficient to fully compensate appellant for her injuries, she submitted a claim for UIM benefits to ANPAC. ANPAC denied appellant's claim pursuant to the "Limits of Liability" clause in Part IV of its policy, otherwise known as "the reducing clause," which states that UIM "[a]mounts payable will be reduced by: (1) a payment made by the owner or operator of the ... **underinsured motor vehicle,** or organization which may be legally liable; [and] (2) a payment made under the Liability Coverage or Personal Injury Protection Coverage of this policy[.]"

Appellant sued ANPAC, seeking to recover UIM benefits. ANPAC subsequently moved for summary judgment, arguing, in part, that under the policy's reducing clause, "any claimed UIM benefits would have to be reduced by the already ten-dered liability claim of $250,000.00, which would eliminate any potential UIM benefits, because the UIM benefits are limited to $250,000.00." [1] Appellant responded that the reducing clause in ANPAC's policy is contrary to Minnesota law and therefore sought an order from the district court declaring that ANPAC's policy provides her with up to $250,000 in UIM benefits. The district court granted ANPAC's motion for summary judgment and dismissed appellant's complaint seeking UIM benefits under the ANPAC policy. The district court, citing this court's decisions in *Jensen v. United Fire & Cas. Co.,* 524 N.W.2d 536 (Minn.App.1994), *review denied* (Minn. Feb. 3, 1995), and *Engle v. Estate of Fischer,* No. C9–02–1088 (Minn. App. Jan.28, 2003), *review denied* (Minn. Apr. 15, 2003), noted that "[r]educing clauses have been upheld as consistent with established case law that prevents converting first party UIM coverage into additional third party liability coverage." The district court therefore concluded that "[t]he reducing clause in [ANPAC's] policy is enforceable as applied to the facts of this case" provided ANPAC "is not attempting to reduce its UIM benefits based upon liability payments made by another tortfeasor or pursuant to insurance coverage on another vehicle," but instead is reducing benefits where there has been a liability payment previously made under that same policy.

This appeal follows.

---

1. ANPAC also argued that Thomas's vehicle did not "meet the policy definition of an underinsured motor vehicle because of the owned-vehicle exclusion in the policy," and therefore appellant could not recover UIM benefits under the policy. Appellant concedes that Thomas's vehicle is not an underinsured motor vehicle as defined in the policy. But appellant argues that her claim for UIM benefits is based on Frank's vehicle being an underinsured vehicle, and thus the owned-vehi-cle exclusion in the policy does not apply. The district court determined that the owned-vehicle exclusion in the policy does not apply to Frank's vehicle, that Frank's vehicle is an underinsured vehicle under the relevant statute, and therefore that appellant has a legitimate claim "for UIM benefits based on ... Frank's negligence and ... Frank's underinsured vehicle." The owned-vehicle exclusion has not been raised on appeal.

## ISSUE

Did the district court err by granting ANPAC's motion for summary judgment on the ground that the reducing clause in the ANPAC insurance policy is enforceable, thereby eliminating appellant's claim for UIM benefits?

## ANALYSIS

■ The parties do not dispute the underlying facts. In an appeal from a grant of summary judgment when there are no genuine issues of material fact, "we review de novo whether the [district] court erred in its application of the law." *Kelly v. State Farm Mut. Auto. Ins. Co.*, 666 N.W.2d 328, 330 (Minn.2003). Similarly, the interpretation of insurance-policy language based on undisputed underlying facts, as well as statutory construction, are questions of law, which we review de novo. *Jensen v. United Fire & Cas. Co.*, 524 N.W.2d 536, 538 (Minn.App.1994), *review denied* (Minn. Feb. 3, 1995).

■ The extent of an insurer's liability is determined by the insurance contract with its insured as long as that insurance policy does not omit coverage required by law and does not violate applicable statutes. *Lynch ex rel. Lynch v. Am. Family Mut. Ins. Co.*, 626 N.W.2d 182, 185 (Minn. 2001). This court must construe an insurance policy as a whole and must give unambiguous language its plain and ordinary meaning. *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn.1986). But when language in an insurance contract is ambiguous, such that it is reasonably subject to more than one interpretation, we will construe it in favor of the insured. *Progressive Specialty Ins. Co. v. Widness ex rel. Widness*, 635 N.W.2d 516, 518 (Minn. 2001); *Hammer v. Investors Life Ins. Co. of N. Am.*, 511 N.W.2d 6, 8 (Minn.1994).

Minnesota law mandates that all UIM coverage issued in the state be "add-on" coverage, as expressed in Minn.Stat. § 65B.49, subd. 4a (2006), which provides:

> With respect to underinsured motorist coverage, the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle. If a person is injured by two or more vehicles, underinsured motorist coverage is payable whenever any one of those vehicles meets the definition of underinsured motor vehicle in section 65B.43, subdivision 17. However, in no event shall the underinsured motorist carrier have to pay more than the amount of its underinsured motorist limits.

Minnesota courts have refused to award UIM benefits when the claim for benefits results in coverage conversion. *See, e.g., Kelly*, 666 N.W.2d at 331–32 (holding that a policy excluding an insured's vehicle from definition of "underinsured motor vehicle" so as to avoid coverage conversion did not violate No–Fault Act); *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 291 (Minn.1983) (holding that owned-vehicle exclusion in insurance policy barring UIM coverage did not violate no-fault act when the exclusion served to prevent coverage conversion). Coverage conversion occurs when less expensive first-party UIM coverage is used as a substitute for more expensive third-party liability coverage. *Kelly*, 666 N.W.2d at 331.

Here, the reducing clause in ANPAC's insurance policy states that UIM "[a]mounts payable will be reduced by: (1) a payment made by the owner or operator of the ... **underinsured motor vehicle, or** organization which may be legally liable; [and] (2) a payment under the Liability Coverage or Personal Injury Protection Coverage of this policy[.]" ANPAC con-

tends that its reducing clause is enforceable because it prevents the impermissible conversion of first-party UIM coverage into third-party liability coverage. The district court agreed, concluding that because "[t]he reducing clause in [ANPAC's] policy is enforceable as applied to the facts of this case," appellant was appropriately denied UIM benefits under the policy. The district court reasoned that "[r]educing clauses have been upheld as consistent with established case law that prevents converting first party UIM coverage into additional third party liability coverage." As noted, in support of its decision, the district court cited to this court's decisions in both *Jensen* and *Engle v. Estate of Fischer*, No. C9–02–1088, 2003 WL 174541 (Minn.App. Jan.28, 2003), *review denied* (Minn. Apr. 15, 2003).

In *Jensen*, 12–year–old Katie Jensen was severely injured when the vehicle in which she was riding was involved in a single-vehicle accident. 524 N.W.2d at 537. The vehicle, which was owned by Dennis Harker (the father of a friend), was being driven by Katie's older sister Shanna at the time of the accident. *Id.* Three insurance policies potentially covered Katie's injuries arising from the accident: (1) a policy issued by State Farm Mutual Automobile Insurance Company (State Farm) that insured Harker's vehicle; (2) a family/personal policy issued by National Farmers Union Property & Casualty Company (Farmers Union) to Shanna's father, Roger Jensen, that covered Shanna as the driver of the vehicle; and (3) a commercial insurance policy issued by United Fire & Casualty (United Fire) to "Eagle Excavating Jensen Roger dba." *Id.*

Harker's insurer, State Farm, conceded coverage and paid its liability limit of $100,000. *Id.* Farmers Union also paid its liability limit of $100,000 on behalf of Shanna as the driver. *Id.* But because Katie's injuries were not fully compensated by these payments, her father, Roger, filed a declaratory-judgment action on Katie's behalf, seeking UIM benefits under both the Farmers Union policy and the commercial United Fire policy. *Id.* at 537–38. The Farmers Union policy had $100,000 of UIM coverage, and the United Fire policy had UIM coverage of $300,000. *Id.* at 538. The district court subsequently granted summary judgment on behalf of both Farmers Union and United Fire, and Jensen appealed. *Id.*

On appeal, this court began by examining the Farmers Union policy, which contained a reducing clause, stating that "[a]ny [UIM] amounts payable will be reduced by: ... [a]ny payment under the Liability Coverage of this policy." *Id.* Jensen argued that the reducing clause should be ignored because the clause violated the "add-on" nature of UIM coverage as required by the no-fault act. *Id.* at 539. But this court disagreed, stating that "the 1989 amendment is irrelevant under these facts" because "Farmers Union [wa]s not attempting to use liability payments by *other* tortfeasors to reduce the available UIM coverage—which is what the legislature's 'add-on' amendment sought to avoid." *Id.* Instead, this court determined that the reducing clause was "based on the relevant policy's explicit language that excludes recovery when there has been a previous liability payment *under that same policy.*" *Id.* This court therefore affirmed the district court's grant of summary judgment in favor of Farmers Union, holding that the reducing clause expressly decreased the available UIM benefits by the amount of any liability insurance proceeds paid to Katie under the same policy. *Id.* at 538. Consequently "the $100,000 limit of UIM coverage must be reduced by the $100,000 liability coverage that Farmers Union already paid to Katie on behalf of the driver," leaving a balance of zero. *Id.*

This court reasoned that "the reducing clause is in accord with established case law that prevents converting first-party UIM coverage into additional third-party liability coverage." *Id.*[2]

In *Engle,* "appellant Tiesha Engle was injured in a motor vehicle accident while riding as a passenger in a vehicle driven by Brandon Thompson." 2003 WL 174541, at *1. Thompson's vehicle collided with a vehicle driven by Dorothy Fischer and insured by Farmers Insurance Group (Farmers) with liability limits of $100,000. *Id.* Thompson's vehicle was insured by Continental Casualty Company (Continental), which provided for a $100,000 per person and $300,000 per accident limit for both liability and UIM coverages. *Id.* Engle eventually settled with Farmers, Fischer's insurance company, for the policy limit of $100,000 and with Continental, Thompson's insurer, for $70,000. *Id.* Engle subsequently asserted a UIM claim against Continental. *Id.*

Following trial, the jury found Fischer to be 100% at fault for the accident and awarded Engle $206,690.50 in total damages. *Id.* Continental moved to reduce the verdict based on the $70,000 liability payment that it had already paid under its policy on behalf of its insured Thompson, arguing, in part, that the policy language limited its liability. *Id.* Specifically, the "limit of liability" clause in the insurance policy stated that "[a]ny amounts otherwise payable for damages under these coverages shall be reduced by all sums ... [p]aid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Personal Liability Coverage." *Id.* at *3. The district court granted Continental's motion, concluding

that the plain language of the insurance policy limited Continental's liability to $100,000. *Id.* at *2. Accordingly, the district court offset Continental's UIM exposure to Engle by the amount that Continental previously paid in settlement of its liability claim on behalf of Thompson. *Id.* As a result, the district court ordered Continental to pay Engle UIM benefits of $28,500. *Id.* After the district court denied Engle's motion to amend the findings, Engle appealed the district court's decision to this court. *Id.*

Engle argued to this court that Continental's policy violated Minn.Stat. § 65B.49, subd. 3a(1) (2002), because it created a "difference in limits" approach to UIM benefits that was previously abrogated by the Minnesota Legislature. *Id.* at *4. But this court disagreed, stating that

> Continental's policy, which provides that UIM benefits are available up to a per person limit of $100,000 after reduction for any amount paid by Continental under personal-liability coverage is neither a "difference in limits" or "limits less paid" policy. Language similar to that contained in Continental's policy has been characterized as a "reducing clause." *Jensen v. United Fire & Cas. Co.,* 524 N.W.2d 536, 538 (Minn.App. 1994), *review denied* (Minn. Feb. 3, 1995). We considered and rejected the argument asserted by Engle in *Jensen.* 524 N.W.2d at 539–540.

*Id.* This court therefore affirmed, concluding that "[b]ecause Continental's clause does not contravene Minn.Stat. § 65B.49, subd. 3a(1), the [district] court did not err by reducing Continental's UIM payment by the $70,000 it paid to settle Engle's

---

**2.** With regard to the United Fire policy, this court held that because the named insured in the commercial policy was Eagle Excavating, and not an individual, the policy did not apply to Katie, and therefore summary judgment for United Fire was appropriate. *Id.* at 540.

liability claim against Thompson." *Id.* at *5.

Appellant argues that *Jensen* is distinguishable from the facts here because she is not attempting to convert first-party UIM coverage into third-party liability coverage by seeking UIM benefits from ANPAC based on the premise that Thomas's vehicle was underinsured. Instead, she is seeking UIM benefits based on the fact that Frank's vehicle was an underinsured motor vehicle, thereby rendering the reducing clause unenforceable under section 65B.49, subdivision 4a.[3] But respondent contends that, as in both *Jensen* and *Engle*, appellant seeks to recover UIM benefits under the same insurance policy that previously paid its liability limits for the negligence of its insured, and therefore, under the reducing clause, the available UIM benefits should be reduced by the liability payments.

We conclude that the facts in *Jensen* and *Engle* are distinguishable from the facts here. In *Jensen*, a single-vehicle accident, the plaintiff sought UIM benefits under the Farmers Union policy to cover her unpaid expenses caused by the negligence of a tortfeasor who was an insured under the Farmers Union policy and for whom the Farmers Union policy had already paid its liability limits. This court held that, under those facts, a reducing clause stating that amounts payable under the UIM provision would be reduced by

payments made under the liability coverage section is enforceable because it prevents the conversion of less expensive UIM coverage into a second layer of liability coverage. Specifically, we explained that Farmers Union was not attempting to use liability payments by *other* tortfeasors to reduce the available UIM coverage, but instead was attempting to reduce UIM coverage for liability payments made *under that same policy*.

Similarly, in *Engle*, the plaintiff was seeking UIM benefits under the Continental policy. But Continental moved to reduce the amount recoverable based on the amount it had already paid under the liability portion of its own policy on behalf of its insured. Relying on *Jensen*, this court again upheld the validity of the reducing clause and reduced Continental's UIM payments by the amount it paid under the liability portion of the policy to settle the plaintiff's claim against its insured.

Accordingly, if appellant here brought a claim to recover UIM benefits from AN-PAC for injuries caused by Thomas's negligence, appellant would be improperly attempting to convert first-party UIM coverage into third-party liability coverage. Because ANPAC has already made liability payments under the same policy, the ANPAC reducing clause would limit such recovery under *Jensen* and *Engle*.

---

**3.** Appellant also argues that this court incorrectly decided *Engle* and that we should now disregard that decision. Specifically, appellant contends that because the jury in *Engle* ultimately determined that Fischer was 100% at fault for causing the accident, Engle therefore must have sought UIM coverage under the Continental policy based on Fischer's negligence. But despite the fact that the jury ultimately concluded that Fischer was the sole tortfeasor and that Thompson was not at fault for the accident, Continental was still responsible for the pretrial $70,000 liability

settlement it agreed to pay on behalf of Thompson, and thus Engle initially sought UIM coverage alleging that Thompson was an underinsured motorist. Accordingly, as in *Jensen*, we held that the reducing clause in Continental's insurance policy applied so as to reduce "Continental's UIM payment by the $70,000 it paid to settle Engle's liability claim against Thompson," its insured, and *not* that the reducing clause applied so as to reduce UIM compensation based on Fischer's negligence, as appellant suggests. *Engle*, 2003 WL 174541, at *5.

But unlike *Jensen* and *Engle,* appellant is not seeking UIM benefits under the ANPAC policy to compensate for injuries caused by Thomas's negligence. Instead, her claim for UIM benefits is based on the injuries she suffered as a result of Frank's negligence. It is undisputed that Frank's vehicle meets the definition of an underinsured motor vehicle under the ANPAC policy. Accordingly, we find that the facts here are more akin to our decision in *Lahr v. Am. Family Mut. Ins. Co.,* 528 N.W.2d 257 (Minn.App.1995).

In *Lahr,* plaintiff Almira Lahr, riding as passenger in a vehicle driven by Elizabeth Peura, was injured when Peura collided with another vehicle driven by Mary Kay Kivisto. 528 N.W.2d at 258. Peura's vehicle was insured by American Family Mutual Insurance Company (American Family) with liability and UIM limits of $50,000. *Id.* American Family's insurance policy excluded vehicles owned by the insured from its definition of "underinsured motor vehicle." *Id.* Atlantic Mutual Insurance Company (Atlantic Mutual) insured Kivisto for $100,000 in liability coverage. *Id.* Lahr's own vehicle, which was not involved in the accident, was insured by Western National Mutual Insurance Company (Western National) for $100,000 of UIM coverage. *Id.*

American Family (Peura's insurer) paid Lahr $50,000 under its liability coverage. After Lahr notified American Family that she intended to settle with Kivisto and American Family declined to substitute payment for the proposed Atlantic Mutual settlement, Lahr settled her liability claim against Kivisto for $80,000. *Id.* Lahr also received $35,500 from Western National in settlement of her UIM claim. *Id.* Lahr subsequently brought a declaratory-judgment action against American Family, claiming that her damages exceeded $150,000 and seeking $50,000 in UIM benefits "to the extent that Kivisto was under-insured with respect to the portion of damages attributable to Kivisto." *Id.* The district court granted summary judgment to American Family, concluding that, as a matter of law, a passenger may not recover UIM benefits from the driver's insurer. *Id.* Lahr appealed. *Id.*

This court reversed and remanded, concluding that "[t]he district court erred in granting American summary judgment on Lahr's claim for UIM benefits." *Id.* at 260. We recognized that Lahr would be prohibited from obtaining UIM benefits from American Family, her driver's insurer, if the vehicle American Family insured (Peura's) was either the only vehicle involved in the accident or if only one car was at fault, as the recovery of UIM benefits in such circumstances would result in coverage conversion. *Id.* at 259. But we adopted Lahr's contention that this prohibition is "confined to situations where only the passenger's driver is liable (either because only that vehicle is involved or because the other involved vehicle is not at fault)" and that the prohibition thus "does not extend to situations where a passenger seeks UIM benefits from her driver's insurer for the *other* at-fault vehicle's lack of adequate liability coverage." *Id.* We rejected American Family's argument that allowing Lahr to recover UIM benefits from American Family would result in the impermissible conversion of first-party UIM coverage into third-party liability coverage, reasoning:

> Where a vehicle other than the one in which the passenger is riding is potentially at fault, the prohibition against converting the passenger's driver's UIM coverage into liability coverage is not applicable because the driver's lack of adequate liability coverage is not at issue. Rather, the other vehicle's lack of sufficient liability coverage is what triggers the passenger's claim for UIM ben-

efits from her driver's insurer. There is no conversion into third-party liability coverage because Peura's UIM benefits are not substituting for Peura's inadequate liability coverage but for Kivisto's inadequate liability coverage.

*Id.* at 260 (citation omitted).

While we recognize that the dispute in *Lahr* centered on was over the effect of the "owned vehicle exclusion" in the American Family policy and not the enforceability of a "reducing clause," the facts in *Lahr* are similar to those in this case. And the *Lahr* court's decision is similarly focused upon avoiding coverage conversion. As in *Lahr,* appellant properly seeks UIM benefits from ANPAC for Frank's vehicle's lack of adequate liability coverage. Indeed, the Minnesota Supreme Court stated in *Kelly:*

> UIM coverage is designed to "protect against ... the risk that a negligent driver of another vehicle will have failed to purchase adequate liability insurance; that is, it is intended 'to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile.' "

666 N.W.2d at 331 (quoting *Meyer v. Ill. Farmers Ins. Group,* 371 N.W.2d 535, 537 (Minn.1985)). Commentators have similarly noted that

> [i]f there is another motoring tortfeasor, unrelated to the claimant, there is no obstacle to collecting both the liability coverage and the underinsured motorist coverage under one single policy because there are then two distinct, separately insured "risks." One such risk involves the liability claim. If there is a second, unrelated vehicle which is also at fault, that other unrelated vehicle involves a separate risk.... If the other vehicle were inadequately insured, it

would trigger precisely the underinsured motorist "risk" for which the UIM coverage was issued.

Theodore J. Smetak, *Underinsured Motorist Coverage in Minnesota: Old Precedents in a New Era,* 24 Wm. Mitchell L.Rev., 857, 902 (1998); *see also* Theodore J. Smetak et al., *Minnesota Motor Vehicle Insurance Manual* 401 (3d ed. 2000) ("The *Myers* case also has no application in a case where the guest passenger is seeking recovery of UIM benefits under the host driver's vehicle policy based on the fault of the 'other' motorist. The passenger is permitted to recover under the liability coverage on the host vehicle for the negligence of the host driver and under the UIM coverage of the host policy based upon the negligence and inadequate coverage of the *other* at-fault motorist. In such a case, there is no improper conversion of UIM into additional liability coverage because the UIM claim is based on the negligence of the driver of the other motor vehicle." (citations omitted)).

■ Here, appellant is not attempting to convert first-party UIM coverage into additional third-party liability coverage, as in *Jensen* and *Engle.* Instead, ANPAC is seeking to use liability payments made by Austin Mutual, Frank's insurer, on behalf of another underinsured tortfeasor (Frank), to reduce the UIM benefits payable to appellant under the ANPAC policy. This contravenes the statute. Therefore, we conclude that the first portion of ANPAC's reducing clause, which states that UIM benefits may be reduced by "a payment made by the owner or operator of the ... **underinsured motor vehicle,** or organization which may be legally liable," violates Minn.Stat. § 65B.49, subd. 4a, and is therefore unenforceable. Thus, we also conclude that the district court erred when it granted ANPAC's motion for summary

judgment after determining that the reducing clause is enforceable.

## DECISION

Because the first prong of the reducing clause in ANPAC's insurance policy violates Minn.Stat. § 65B.49, subd. 4a (2006), in this context and is therefore unenforceable, we conclude that the district court erred by granting ANPAC's motion for summary judgment.

**Reversed and remanded.**