Larry Benjamin JOHNSON, Appellant,

v.

Brian Cletus CUMMISKEY,
et al., Respondents.

No. A08–1315.

Court of Appeals of Minnesota.

May 26, 2009.

Michael A. Bryant, Bradshaw & Bryant, PLLC, Park, MN, for Amicus Curiae Minnesota Association for Justice.

Considered and decided by ROSS, Presiding Judge; HALBROOKS, Judge; and JOHNSON, Judge.

## OPINION

ROSS, Judge.

A driver whose car had only $30,000 of liability insurance coverage struck a motorcyclist, causing the motorcyclist $134,000 in damages. The motorcyclist recovered $34,000 from the car's driver and the driver's insurer. The motorcyclist then sought the balance from his own policy's underinsured motorist (UIM) coverage. He sued his insurer after it applied the limits-less-paid clause of his policy to pay him only a portion of his remaining damages, deducting the $34,000 already paid to him. Injured motorcyclist Larry Johnson appeals from the district court's summary judgment decision dismissing his claim in favor of his insurer, Illinois Farmers Insurance Company. We are asked to decide whether the No–Fault Automobile Insurance Act invalidates the limits-less-paid clause of Johnson's policy with Illinois Farmers and instead requires Illinois Farmers to pay Johnson using the damages-less-paid method. Because we conclude that the No–Fault Act does not require a motorcycle insurance policy that provides some UIM coverage to provide all UIM coverage required of policies for other types of vehicles, we affirm.

## FACTS

The facts relevant to this appeal are undisputed. In July 2005, Brian Cummiskey's Mercury Grand Marquis collided with Larry Johnson's Harley–Davidson, causing Johnson at least $134,000 in damages. Cummiskey was 100% at fault, but

Gerald L. Maschka, Jorun Groe Meierding, Maschka, Riedy & Ries, Mankato, MN, for appellant.

Roger H. Gross, Timothy J. Crocker, Gislason & Hunter, LLP, Minneapolis, MN, for respondents.

he carried only $30,000 in automobile liability coverage. Johnson sued to recover his damages from Cummiskey and from Johnson's own insurance provider, Illinois Farmers Insurance Company.

Johnson settled with Cummiskey for $34,000—$4,000 from Cummiskey and $30,000 from Cummiskey's insurer—and claimed that he also was entitled to the $100,000 maximum of UIM coverage under his own policy with Illinois Farmers. But the UIM provision of Johnson's policy contains a limits-less-paid reducing clause, so Illinois Farmers agreed to pay Johnson only $66,000, calculated by subtracting from his policy's $100,000 limit the $34,000 he had already received from Cummiskey and Cummiskey's insurer. The limits-less-paid clause that Illinois Farmers relies on and which triggered this dispute states as follows:

> We will pay an insured person for unpaid damages resulting from a motor vehicle accident ... but not more than: ... [t]he lesser of the difference between the limit of uninsured (underinsured) motorist coverage and the amount paid to the insured person by any party held to be liable for the accident.

The district court agreed with Illinois Farmers and applied this reducing clause by its express terms, granting Illinois Farmers' motion for summary judgment and limiting Johnson's recovery for UIM coverage to $66,000.

Johnson appeals.

## ISSUE

Does the No–Fault Automobile Insurance Act require a motorcycle insurance policy to be reformed to provide *full* UIM coverage using a damages-less-paid structure, which is statutorily required of policies insuring other types of vehicles, because the motorcycle policy provides *some* UIM coverage?

## ANALYSIS

■ Johnson contests the district court's summary judgment decision against him. Because no factual disputes exist, we review summary judgment to determine whether the district court correctly applied the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). We hold that it did.

■ Johnson argues that the district court based summary judgment on its erroneous understanding of Minnesota's No–Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41–.71 (2008). He contends that Illinois Farmers must pay him the $100,000 maximum of his UIM policy—the amount of his total damages that Cummiskey and Cummiskey's insurer did not cover. According to Johnson, the No–Fault Act requires auto insurers to provide all vehicles with full UIM coverage when the insurer provides a motorcyclist with any UIM coverage at all.

Both parties agree that the focal point of this dispute is the coverage method that the No–Fault Act applies to UIM insurance on some types of vehicles. The disputed statute with its heading reads as follows:

> **Liability on underinsured motor vehicles.** With respect to underinsured motorist coverage, the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle. If a person is injured by two or more vehicles, underinsured motorist coverage is payable whenever any one of those vehicles meets the definition of underinsured motor vehicle in section 65B.43, subdivision 17. However, in no event shall the underinsured motorist carrier

have to pay more than the amount of its underinsured motorist limits.

Minn.Stat. § 65B.49, subd. 4a. Courts have consistently interpreted this provision to hold that UIM coverage must be calculated as "damages less paid" coverage (also known as modified "add-on" coverage), which would conflict with the limits-less-paid calculation that the Johnson–Illinois Farmers policy directs. *See Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598, 603 (Minn.2001) ("[U]nder the current UIM provisions, coverage is 'damages less paid' coverage."); *Mitsch v. Am. Nat'l. Prop. & Cas. Co.*, 736 N.W.2d 355, 358 (Minn.App. 2007) ("Minnesota law mandates that all UIM coverage issued in the state be 'add-on' coverage."), *review denied* (Minn. Oct. 24, 2007); Theodore J. Smetak, *Underinsured Motorist Coverage in Minnesota: Old Precedents in a New Era*, 24 Wm. Mitchell L.Rev. 857, 873 (1998) (characterizing the No–Fault Act as requiring "damages less paid" coverage, also described as "modified 'add-on' coverage"). Johnson accurately explains that if we apply the coverage method of subdivision 4a to his claim, he would receive $100,000 from Illinois Farmers.

Illinois Farmers concedes that if the statutory method applies, Illinois Farmers could not follow the policy's express language that reduces the coverage by the amount Johnson recovered from Cummiskey. But it contends that the statutory method simply does not apply to motorcycle policies. We must therefore determine whether to apply Minn.Stat. § 65B.49, subd. 4a, the portion of the No–Fault Act that controls the method for measuring required UIM coverage, to the Johnson-Illinois Farmers policy.

■■■ We begin with a presumption that Johnson is limited to the bargained-for, limits-less-paid formula, which guaranteed that he would receive a total of no less than $100,000 from all sources if an uninsured or underinsured motorist caused him injuries of at least that amount. Minn. Const. art. I, § 11 (prohibiting laws that impair contract obligations); *Dairyland Ins. Co. v. Implement Dealers Ins. Co.*, 294 Minn. 236, 244–45, 199 N.W.2d 806, 811 (1972) (restating prior holdings that unambiguous insurance contracts are to be enforced as written). But the right to contract does not prevent judicial intervention to expand coverage beyond the parties' bargain. *Streich v. Am. Family Mut. Ins. Co.*, 358 N.W.2d 396, 399 (Minn. 1984). Judicial authority to alter private insurance contracts requires a significant basis, however, so we will disturb a bargain only when the law requires. "[A]n insurer's liability is governed by the contract between the parties only as long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes." *Am. Nat'l Prop. & Cas. Co. v. Loren*, 597 N.W.2d 291, 292 (Minn.1999) (quotation omitted).

Johnson's argument that the No–Fault Act authorizes and requires judicial reformation of the UIM coverage provision of his contract with Illinois Farmers requires us to determine the reach of section 65B.49, subdivision 4a. The correct interpretation of statutes is a question of law subject to our de novo review. *Schons v. State Farm Mut. Ins. Co.*, 621 N.W.2d 743, 745 (Minn.2001); *Loren*, 597 N.W.2d at 292.

■■■ Illinois Farmers emphasizes that motorcycles are excluded from mandatory UIM coverage under the No–Fault Act. It maintains that the statute requiring the broader method of calculating UIM coverage is therefore irrelevant to its policy with Johnson. It is clear that the No–Fault Act does not require insurers to provide motorcycles with UIM coverage. The Act generally obliges automobile own-

ers and insurers to meet certain minimum standards for insurance coverage to compensate accident victims. Minn.Stat. §§ 65B.41 to 65B.71. It requires that every insurance policy covering a "motor vehicle" must include coverage for basic economic loss and bodily injury, along with uninsured and UIM coverage at specified minimum levels. Minn.Stat. § 65B.49, subds. 1–3a. But "motor vehicles" are the only class of vehicle that the Act requires to be covered by UIM coverage, and motorcycles are not within the Act's definition of "motor vehicle." Minn.Stat. § 65B.43, subd. 2. This could not be more obvious, since the Act defines a "motor vehicle" as a highway-operated vehicle subject to registration requirements, *"other than a motorcycle* or other vehicle with fewer than four wheels." *Id.* (Emphasis added.) Motorcycles, like school buses, farm tractors, all-terrain vehicles, and marked patrol cars, are exempt from the No–Fault Act's generally applicable coverage requirements. *See Mut. Serv. Cas. Ins. Co. v. League of Minn. Cities Ins. Trust,* 659 N.W.2d 755, 759–60 (Minn.2003) (listing statutory exclusions and adding marked patrol cars to the list). Motorcycles are not "motor vehicles," and, as a result, motorcycle insurance need not provide uninsured or underinsured motorist coverage at all. Minn.Stat. §§ 65B.43, subd. 2, 65B.48, subd. 5; *Loren,* 597 N.W.2d at 293.

This much is uncontested. But Johnson contends that the statute's express language excluding motorcycles from the "motor vehicle" class, for which insurance liability policies must include UIM coverage, is immaterial. He maintains that once an insurer provides *some* amount of UIM coverage—even for a motorcycle, which requires no UIM coverage at all—subdivision 4a requires the insurer to provide the *full* amount of coverage that subdivision 4a requires of "motor vehicles." Subdivision 4a does not expressly state

whether it applies only to those polices that include coverage required by the No–Fault Act, as Illinois Farmers contends, or whether it applies to all insurance policies issued in Minnesota, as Johnson contends. To the extent this omission creates an ambiguity, we must resolve it to determine the coverage that Johnson is entitled to under the Johnson–Illinois Farmers insurance policy. *See Beck v. City of St. Paul,* 304 Minn. 438, 445, 231 N.W.2d 919, 923 (1975) (explaining that when a statute is ambiguous appellate courts are to determine and give effect to legislative intent).

We recognize that section 65B.49, subdivision 4a, *might* be read to impose a standard, invariable structure to calculate coverage very generally "[w]ith respect to underinsured motorist coverage." After all, it does not expressly distinguish between UIM coverage that is required under the Act and UIM coverage that is not. On this omission, Johnson urges us to read it as applying a mandatory measure of coverage that must apply to all insurance policies issued in Minnesota that include any UIM coverage, regardless of whether the No–Fault Act requires coverage or whether the parties merely voluntarily entered into an agreement that includes UIM coverage. But the context, history, and analogous caselaw regarding the operative subdivisions in section 65B.49 lead us to conclude that courts may not rely on subdivision 4a to expand a policy's UIM coverage unless the coverage itself is required by law.

### Contextual Relationship of Subdivisions 3a and 4a

We first consider the ambiguous language in its context. Section 65B.49, subdivision 3a, which requires UIM coverage only for "motor vehicles," and subdivision 4a, which immediately follows and indicates the maximum liability of an insurer that provides UIM coverage, appear to interrelate by their terms and placement.

Both sit in the No–Fault Act specifically, which is only a subset of the general "Automobile Insurance" statutes, chapter 65B. Had the legislature intended subdivision 4a to apply generally and independent of the No–Fault Act, it more likely would have done so much more obviously by including it elsewhere in the chapter as its own section rather than as a subdivision within the No–Fault Act. This is precisely the legislature's approach with generally applicable obligations on auto policies. *See e.g.*, Minn.Stat. §§ 65B.1311 (requiring insurance coverage for former spouses); .132 (requiring certain student discounts); .133 (requiring certain disclosure).

The legislature not only included subdivision 4a in the No–Fault Act, it also included it in the same section and immediately following the subdivision requiring UIM coverage for some (but not all) vehicles. In substance, both subdivisions apply the phrase "underinsured motorist coverage" and they seem to work together by design. The first of these two subdivisions defines the insurer's duty to provide UIM coverage for motor vehicles, and the second defines the method to calculate the insurer's liability for the required UIM coverage. *Compare id.*, subd. 3a ("No plan ... may be ... issued ... with respect to any motor vehicle ... unless separate ... underinsured motorist coverages are provided therein.") *with id.*, subd. 4a ("[I]n no event shall the underinsured motorist carrier have to pay more than the amount of its underinsured motorist limits."). The proximity and context argues against Johnson's interpretation. And the background of these subdivisions demonstrates that their close proximity is not coincidental.

### Historic Relationship between Requirement to Issue Coverage and Required Coverage

A look at Minnesota's brief record of regulating UIM coverage informs us that the legislature's interest in how UIM coverage is calculated relates directly to the legislature's interest in requiring insurers to include or make available UIM coverage. This 40–year history highlights the correlation between the Act's requirement in subdivision 3a that only some vehicles must have UIM coverage and its requirement in subdivision 4a that this coverage must be calculated on a damages-less-paid basis.

Before 1967, when the legislature passed its first law regarding uninsured motorist coverage, Minn.Stat. § 72A.149 (1967), Minnesota courts were not in the business of reforming terms of underinsured or uninsured motorist provisions to meet any particular public policy or system of recovery. Instead, courts relied on the parties to negotiate their own bargain. The supreme court expressly noted this in 1969:

> At the time plaintiff had her accident [before 1967], Minnesota did not have a public policy expressed by statute regarding uninsured motorist coverage. Therefore, there was nothing to require that an insurance company extend coverage beyond the terms of its insurance contract.

*Farkas v. Hartford Accident & Indem. Co.*, 285 Minn. 324, 331, 173 N.W.2d 21, 26 (1969). That deference to the contracting parties began to change in 1971, when the legislature amended the statute regulating auto-insurance providers. The amendment required UIM coverage to be "made available" to policyholders. Minn.Stat. § 65B.25 (1971). Under that law, an insured person could not recover under her UIM provision unless the policy's UIM coverage limits exceeded the amount recovered from the insured tortfeasor. Minn.Stat. § 65B.26(d) (1971); *see also Lick v. Dairyland Ins. Co.*, 258 N.W.2d

791, 793 (Minn.1977) (applying Minn.Stat. § 65B.26(d)). This began the courts' role in reforming UIM provisions that failed to meet minimum benchmarks established by statute. Before 1974, therefore, our courts never mentioned "underinsured motorist coverage," let alone reformed a UIM insurance provision to expand coverage to fit any particular public policy or statutory scheme.

The law remained intact until 1974, when Minnesota first adopted its No–Fault Act. 1974 Minn. Laws ch. 408, §§ 1–35, at 762–86. And since then, that law has taken on various forms to reflect policy shifts concerning whether to require UIM coverage at all and, if so, what system of calculation would govern. *See generally Dohney,* 632 N.W.2d at 600–03 (discussing changes in UIM coverage in No–Fault Act); *see also* Smetak, *supra,* at 867–73 (outlining the evolution of UIM coverage in Minnesota's No–Fault Act). Johnson accurately asserts that before 1989, UIM liability was calculated under the same limits-less-paid approach described by the parties' insurance policy here, but that after the legislature amended the No–Fault Act in 1989, policies have either been reformed or read to expand coverage under the damages-less-paid approach. *Dohney,* 632 N.W.2d at 602–03.

The legislative policy that describes how to calculate coverage of UIM provisions is now embodied in subdivision 4a of section 65B.49, the subdivision that Johnson urges us to apply to his motorcycle policy even though the legislature has never required motorcycles to be protected by UIM coverage at all. We are not persuaded by his urging, because legislative interest in *how* UIM coverage applies has always followed its interest in *whether* UIM coverage applies. This historic legislative relationship between the operative provisions strongly suggests that subdivision 4a is not intend-ed as a statute of general application to policies that do not require any UIM coverage under subdivision 3a. Neither the legislature nor the courts have ever expressed any policy favoring expanding UIM coverage beyond the parties' agreed-upon terms except for those insurance policies that must, as a matter of law, include UIM coverage.

■ There is a clear and logical legislative relationship between the requirement that some policies include UIM coverage and the requirement that this mandatory coverage be calculated using a specified standard method. This demonstrates that the legislature did not intend for us to reform UIM provisions beyond those cases where UIM coverage is mandatory. And we discern no legislatively directed interest in imposing a standard to calculate coverage on insurance policies that are not required to include any UIM coverage. In addition to the contextual arrangement and the short history of the legislature's interest in the field, the limited but analogous caselaw also argues for interpreting subdivision 4a to apply only to those insurance policies that require UIM coverage.

### Analogous Caselaw

Another significant weakness in Johnson's position is that it contradicts the reasoning of analogous caselaw regarding policies that are not required to contain UIM coverage. In *Aguilar v. Texas Farmers Insurance Company,* we considered the district court's holding that a liability policy must be reformed to include add-on benefits under section 65B.49. 504 N.W.2d 791, 793 (Minn.App.1993). That policy, like the Illinois Farmers policy we consider today, contained a UIM provision with a limits-less-paid clause that the insurer relied on to subtract paid damages from its coverage. We reversed on the following reasoning, which applies with

equal force to our analysis here: "The Texas Farmers policy contained all of the statutorily-mandated coverages. Anything in addition to the statutorily-mandated coverages, such as UIM coverage, is a matter of contract between the parties." *Id.* at 794.

Johnson would have us disregard *Aguilar* on the theory that *Aguilar* stands only for the proposition that UIM policies bought by nonresidents need not comply with Minnesota law. We do not read *Aguilar* so narrowly. No doubt, *Aguilar* rested on the idea that Minnesota law "does not require out-of-state policies to contain UIM benefits." *Id.* That the law did not require the insurer to provide the additional coverage, however, was merely the first step of our analysis. The second step is more relevant here. We reasoned further that *because* the insurer was not required to provide UIM coverage at all, the operative provisions governing mandatory UIM motorist coverage simply did not apply, and the parties were left to the UIM coverage they had bargained for. *Id.*

■ Applying the logic of *Aguilar* here leads to the same result and for the same reason. It is not disputed that the Illinois Farmers policy also "contained all of the statutorily-mandated coverages." The insurers in both cases had no statutory duty to provide any UIM coverage. We are not concerned with *why* this is so, but with the fact that this is so. In *Aguilar*, the insurer had no duty to provide the coverage because, under Minnesota law, out-of-state insurance policies need not include the coverage; and in this case, the insurer had no duty to provide the coverage because, under Minnesota law, motorcycle insurance policies need not include the coverage. How the two policies get there is different, but the endpoint is the same. And from that endpoint, *Aguilar*'s reasoning provides the basis for our analysis. We there-

fore apply the same reasoning here. Types of coverage not mandated by statute, including optional UIM coverage with a limits-less-paid reducing clause, are a matter of contract between the parties not subject to reformation.

We are not persuaded otherwise by Johnson's argument that *Aguilar* does not provide the proper analogy. He contends that whether the UIM coverage was optional or required is irrelevant, analogizing that section 65B.49, subdivision 4a, requires that the coverage be based on an add-on formula even if the insurer purchased UIM coverage in excess of the statutory minimum coverage amount. *See* Minn.Stat. § 65B.49, subd. 3a. He asserts that if, for example, he had insured a car rather than a motorcycle with the same UIM maximum limit of $100,000, he would have been entitled to reformation under subdivision 4a using the damages-less-paid method. He cites nothing in support of his premise, but we need not address it. We have already observed the existence of a legislative relationship between the requirement that certain vehicles have UIM coverage and its interest in regulating the method of calculating that coverage. So while it might be true that UIM clauses covering "motor vehicles" using a limits-less-paid method are subject to reformation even in situations where the limits-less-paid method would satisfy the statutory minimum UIM coverage, the analogy does not carry forward to reach motorcycle coverage.

### Additional Concerns

We add that interpreting the No–Fault Act as Johnson requests would lead to a rather impractical application of law. It would require us to conclude that although the legislature is content with insurers providing no UIM coverage for motorcycles, it is not content with insurers providing some UIM coverage for motorcycles.

The object of the Act is to establish a standard for UIM coverage for certain vehicles. Just as it would have been ineffective to require UIM "coverage" without imposing a standard to calculate that coverage, it would be incongruous to require a standard to calculate coverage for those vehicles for which the coverage is not required. The legislature expressly declined to require insurers to include any UIM coverage in their motorcycle policies, and in doing so, it implicitly declined to demand reformation to extend UIM coverage for motorcycles beyond what the parties bargained for.

We understand that our case of *Mitsch v. American National Property & Casualty Co.*, 736 N.W.2d 355, appears on its face to suggest a different conclusion. *Mitsch* was a case involving motorcycle UIM coverage in which this court stated broadly that "Minnesota law mandates that *all* UIM coverage issued in the state be [damages-less-paid] 'add-on' coverage," which means the insurer's liability would not be reduced by amounts collected from the underinsured driver. *Id.* at 358 (emphasis added). This broad language in *Mitsch* extends beyond its analysis and its holding.

Mitsch was injured as a passenger on her husband's motorcycle, and she sought to recover from her husband's insurer. *Id.* at 357. Her husband had purchased insurance for his motorcycle, which included UIM coverage. *Id.* The *Mitsch* court refused to give effect to a clause in Mitsch's insurance policy that reduced the insurance company's liability, concluding that the clause violated the No–Fault Act— specifically section 65B.49, subdivision 4a. *Id.* at 363–64. The court concluded that the statute established a method of calculating the motorcycle insurer's liability that precluded enforcement of the reducing clause in the insurance contract. *Id.*

But the *Mitsch* court was not asked to consider the fact that UIM coverage is not required in motorcycle insurance policies under the No–Fault Act. It focused only on whether Mitsch's claim was an attempt to improperly convert first-party UIM coverage into third-party liability coverage. *Mitsch* did not address the fact that Mitsch sought to apply the No–Fault Act to a motorcycle insurance policy. And our review of the briefing in that case establishes that the issue was never raised. Although *Mitsch* states that "all" UIM coverage must be "add-on" and not "limits-less-paid," we conclude that the statement was in the form of dictum and does not control our interpretation of Minnesota's No–Fault Act. *See Naftalin v. King*, 257 Minn. 498, 503, 102 N.W.2d 301, 304 (1960) (explaining that "considered dicta" may be persuasive but do not bind future decisions when the issue is presented). *Mitsch* therefore does not constrain our analysis of whether the No–Fault Act bars "limits-less-paid" UIM coverage in motorcycle insurance policies.

■ To construe Minnesota Statutes section 65B.49, subdivision 4a to apply to motorcycle insurance would extend rights created by the No–Fault Act "beyond those provided by the legislature." *Mut. Serv. Cas. Ins. Co.*, 659 N.W.2d at 762. Instead, because "limits-less-paid" UIM coverage offered as part of a motorcycle liability insurance policy does not contravene Minnesota's No–Fault Act, Johnson's contract with Illinois Farmers does not merit reformation and must be enforced as written. This result is consistent with Minnesota's public policy interest in the freedom to contract. *Perl v. St. Paul Fire & Marine Ins. Co.*, 345 N.W.2d 209, 215 (Minn.1984).

### Amicus Curiae Arguments

■ The amicus curiae presents three alternative reasons that we should

nonetheless refuse to enforce the reducing clause. It argues that the insurance policy's clause violates the "reasonable expectations doctrine," that the policy provides "illusory coverage," and that a policy holder could never recover the full policy amount because Minnesota requires drivers to carry a minimum of $30,000 in liability coverage. The arguments are unavailing.

The first two arguments lack any factual basis in this appeal. The reasonable expectations doctrine applies when a policy is ambiguous or if it contains important but obscure provisions unknown to the insured. *Atwater Creamery Co. v. W. Nat. Mut. Ins. Co.*, 366 N.W.2d 271, 277 (Minn.1985). The reducing clause in Johnson's policy appears in plain language ("We will pay ... for damages resulting from a motor vehicle accident ... but not more than: ... The lesser of the difference between the limit of uninsured (underinsured) motorist coverage...."), under an appropriate heading ("Limits of Liability"), and in reasonably-sized text. And Johnson has not claimed that the terms of his policy were hidden or obscure. A policy's coverage is illusory if it "turns out to be functionally nonexistent." *Jostens, Inc. v. Northfield Ins. Co.*, 527 N.W.2d 116, 119 (Minn.App.1995), *review denied* (Minn. Apr. 27, 1995). Johnson's policy guaranteed that if he were injured in an accident caused by an underinsured motorist, he would recover at least $100,000 from all sources. Coverage under Johnson's policy is obviously not "functionally nonexistent" because his dispute with Illinois Farmers regards whether he is entitled to more than the $66,000 that the policy entitles him to recover.

The argument that Johnson could never recover the full $100,000 of coverage under his policy is unpersuasive for two reasons. First, it is not relevant; the policy does not promise a $100,000 payment from the UIM insurer in every case, but that coverage is determined as $100,000 minus damages collected from the "at fault vehicle." Second, it ignores the fact that Johnson could have recovered the full $100,000 in circumstances other than this one, such as if Cummiskey's liability insurance had been paid entirely to an additional victim of the same accident.

## DECISION

Because Minnesota's No–Fault Automobile Insurance Act does not require UIM provisions in motorcycle insurance policies to be reformed from a limits-less-paid structure to a damages-less-paid structure, the Johnson–Illinois Farmers insurance policy does not violate the Act, and the district court correctly constrained Johnson's right to recover to his bargained-for amount.

**Affirmed.**